**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **No. 4:20-CR-00759-AGF** |
| | ) |
| | ) |
| **RODNEY D. PRICE,** | ) |
| | ) |
| **Defendant.** | ) |

**PRETRIAL CONFERENCE**

**BEFORE THE HONORABLE AUDREY G. FLEISSIG**
**UNITED STATES DISTRICT JUDGE**

**OCTOBER 19, 2022**

APPEARANCES:

For Plaintiff:  Robert F. Livergood, Esq.
                Jillian S. Anderson, Esq.
                OFFICE OF THE U.S. ATTORNEY
                111 South 10th Street, 20th Floor
                St. Louis, MO 63102

For Defendant:  Joseph M. Hogan, Esq.
                JOSEPH M. HOGAN, ATTORNEY AT LAW
                7751 Carondelet Ave., Suite 700
                Clayton, MO 63105




Reported By:    CARLA M. KLAUSTERMEIER, RMR, CRR, CSR, CCR
                Official Court Reporter
                United States District Court
                111 South 10th Street
                St. Louis, MO 63102 | (314)244-7984


    PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1              **(The proceedings commenced at 9:35 a.m.)**

2              **(The following proceedings were held in open court**

3     **with the defendant present:)**

4              **THE COURT:**  Kelley, can you contact Sara and see if

5     she prepared a seating chart?  Do we have a seating chart for

6     how we're doing all the jurors?

7              **THE CLERK:**  No.  I can do one though.

8              **THE COURT:**  Okay.  Because we have more than our

9     normal.

10             **THE CLERK:**  We have 50; right?

11             **THE COURT:**  And is that seating set up for that or

12    not?

13             **THE CLERK:**  Those, I think, just have not been taken

14    off of the benches yet.

15             **THE COURT:**  Okay.  Well, we've got some work to do

16    to get this set up --

17             **THE CLERK:**  Okay.

18             **THE COURT:**  -- to do the voir dire unless we're

19    moving voir dire down to 3.

20             **THE CLERK:**  No.  I will -- I'll work on that today.

21             **THE COURT:**  Okay.  But check -- you know, we're

22    going to need a seating chart to give to the attorneys.

23             **THE CLERK:**  Yeah.  I'll work on it now.

24             **THE COURT:**  All right.  Good morning.

25             **MR. HOGAN:**  Good morning, Your Honor.

 1            **MS. ANDERSON:**  Good morning, Your Honor.

 2            **THE COURT:**  We are here in the matter of United

 3     States of America v. Rodney D. Price.  It is

 4     Case No. 4:20-CR-759-AGF.

 5            And the United States is represented by Assistant

 6     United States Attorneys, Jillian Anderson and Robert

 7     Livergood.  And Mr. Price is present and represented by his

 8     attorney, Mr. Joseph Hogan.

 9            This matter is scheduled before the Court today for

10     a final pretrial conference.  Are the parties ready to

11     proceed?

12            **MR. HOGAN:**  Yes, Your Honor.

13            **MS. ANDERSON:**  Yes, Your Honor.

14            **THE COURT:**  All right.  And, Mr. Price, you may

15     recall, my name is Audrey Fleissig and I'm the district judge

16     to whom your case is assigned.  And you understand that we're

17     here today for a final pretrial conference?

18            **THE DEFENDANT:**  Yes.

19            **THE COURT:**  And that your case is scheduled to

20     proceed to trial on Monday morning.  You understand that?

21            **THE DEFENDANT:**  Yes.

22            **THE COURT:**  All right.  So what we're going to do

23     today is we're going to have -- we're going to go through some

24     housekeeping proceedings, I'm going to rule -- address all of

25     the outstanding motions, pretrial motions that are filed with

1   respect to the case, we will have a discussion with respect to

2   any plea offers and address everything that we need to, to get

3   the case ready for trial.  You understand that?

4           **THE DEFENDANT:**  Yes.

5           **THE COURT:**  All right.  So before we get there, let

6   me just ask if the parties are currently engaged in any -- in

7   any discussions with respect to a plea?

8           **MS. ANDERSON:**  Not at this time, Your Honor.

9           **THE COURT:**  Okay.

10           **MR. HOGAN:**  That's correct, Your Honor.

11           **THE COURT:**  All right.  So let me ask you first, how

12   long do the parties think that this case is going to take to

13   try?

14           **MR. HOGAN:**  I believe, Your Honor, with jury

15   selection, no more than three days.

16           **MS. ANDERSON:**  I would concur with that, Your Honor.

17           **THE COURT:**  Okay.  And with respect to -- I have

18   requested that 50 people be brought in for our jury selection

19   process.  Is everybody okay with two alternates?  Anybody

20   think we need more than two alternates?

21           **MR. HOGAN:**  I'm okay with two, Your Honor.  I don't

22   think we need any more.

23           **MS. ANDERSON:**  I think two is sufficient as well,

24   Your Honor.

25           **THE COURT:**  All right.  And assuming that we are

1    starting on Monday morning -- and give me just a second to

2    pull up my calendar.  All right.  So starting on Monday

3    morning.  That is Monday, the 24th.  And Tuesday, Wednesday.

4    At the latest, we would expect to have the case to the jury

5    then on Thursday.  Does anybody have any special needs that

6    need to be met during any of those days?

7              **MR. HOGAN:**  No, Your Honor.

8              **MS. ANDERSON:**  No, Your Honor.

9              **THE COURT:**  All right.  And all motions *in limine*

10   have been filed?  I've seen a bunch of motions that were filed

11   by the -- by the Government in this matter.  And I know that

12   some were filed back when the case was originally scheduled

13   for trial in April and then some additional -- some of those

14   seemed to be duplicates, but I wasn't entirely sure with

15   respect to others.  But has the Government filed all of its

16   motions *in limine* and other notices and motions?

17             **MS. ANDERSON:**  Yes, Your Honor.

18             **THE COURT:**  All right.  And anything that the

19   defendant was anticipating filing?

20             **MR. HOGAN:**  No, Your Honor.

21             **THE COURT:**  And I assume that you've had an

22   opportunity to review what has been filed by the Government?

23             **MR. HOGAN:**  I have, Your Honor.  I've given copies

24   to my client.  Your Honor, the only thing I'll be filing

25   between now and then is I do have some proposed voir dire

1   questions, but not many.

2           **THE COURT:**  Okay.

3           **MR. HOGAN:**  But I'll get them.  What I'll do is I

4   will talk to Jillian and, hopefully -- I don't -- hopefully,

5   I'll just call you and let you know or call your clerk and

6   say, We've agreed to these questions.

7           **THE COURT:**  All right.  And were those questions

8   that relate, specifically, to the fact that this is a case

9   dealing with child pornography or just otherwise?

10          **MR. HOGAN:**  Some are general, Your Honor.  But there

11  are a couple relating exactly to any sex-related offense.

12          **THE COURT:**  Okay.  All right.  Well, let's kind of

13  get that wrapped up as soon as we can --

14          **MR. HOGAN:**  I will.  I'll try to get that today,

15  Your Honor.

16          **THE COURT:**  -- because I do want to review any such

17  questions before the end of the week.

18          **MR. HOGAN:**  Your Honor, I'm going to try to get that

19  to Jillian today.

20          **THE COURT:**  All right.  Good.  And so I just want to

21  kind of walk you through how we are going to conduct the trial

22  and the voir dire.  I know that I have had an all -- all

23  persons masked policy in my courtroom, but it is my intent,

24  unless anyone has a problem with it, to make masks optional

25  for the trial.  Is anybody uncomfortable with doing that?

1              **MR. HOGAN:**  No, Your Honor.

2              **MS. ANDERSON:**  No, Your Honor.

3              **THE COURT:**  All right.  And that means that if a

4    juror wants to wear a mask, the juror will be permitted to

5    wear a mask, and then you all are welcome to wear masks or not

6    as you please in the courtroom.  And I believe at this point,

7    since I go -- everywhere I go, nobody but me is wearing a

8    mask, I think we're probably okay with that, but I also

9    believe that anyone who wants to provide that extra protection

10   to themselves ought to be able to do that.  Anyone have a

11   problem with that?

12             **MR. HOGAN:**  No, Your Honor.

13             **MS. ANDERSON:**  No, Your Honor.

14             **THE COURT:**  All right.  So, obviously, what we're

15   going to do is we will seat the jurors.  I don't have a

16   seating chart for you, but, obviously, you know, putting 50

17   jurors in here now is -- you know, we're not going to be able

18   to adhere to the distancing that we did previously.  So we

19   will have to re-mark the benches.

20             And I don't know, Kelley, if it makes sense to keep

21   those on there.  We could always cover them up with Post-its

22   just for the voir dire, you know what I'm saying --

23             **THE CLERK:**  Yes.

24             **THE COURT:**  -- so that you wouldn't have to take

25   those off and put them back on another day.

1          **THE CLERK:**  Okay.  I can do that.

2          **THE COURT:**  So just think about it.  If there's, you

3     know, something that you wanted to do so that we didn't have

4     to, kind of, redo that process for the next trial.

5          So, as you know, what you will get is the sheet that

6     has some very basic information about each of the people on

7     the venire panel.  It's not a lot of information, but we will

8     bring it up to you.  I will give you -- I will give both sides

9     some time to review that.  And then we will begin the

10    voir dire process.

11          I will be reading to the jurors the initial

12    instruction that basically tells them, you know, that they

13    need to turn their cell phones off, that they can't discuss

14    the case, that they cannot do any research, and make sure that

15    they are willing to adhere to those requirements.  And then we

16    will, you know, begin with the voir dire process.  It is going

17    to, of course, begin with an explanation of the case.  And so

18    one of the things that I need from you all is a summary of the

19    case.

20          **MR. HOGAN:**  Your Honor, we have that prepared

21    already.

22          **THE COURT:**  All right.  And do I have it or do you

23    just have it?

24          **MS. ANDERSON:**  It was filed, Your Honor, on Monday,

25    the 17th.

1          **THE COURT:**  Oh, my goodness.  I don't think I've

2     seen that.  All right.

3          **MS. ANDERSON:**  I believe, Your Honor, that it may

4     have been filed with a label across the top that said

5     "Stipulation of the Parties."  In fact, it is the statement of

6     the case and I may have a hard copy as well.

7          **MR. HOGAN:**  It's very basic, Your Honor.  It follows

8     the indictment.

9          **THE COURT:**  Yeah.  I don't have it.  It's not in my

10    trial notebook for some reason.

11         **THE CLERK:**  Jillian, when did you say that was

12    filed?

13         **MS. ANDERSON:**  It was filed on Monday, the 17th.

14         **THE COURT:**  Sorry.  Just give me a second here.

15         **THE CLERK:**  And what was the pleading called?

16         **MS. ANDERSON:**  I believe it may have been entitled

17    "Stipulation of the Parties."

18         **MR. LIVERGOOD:**  There was another one.

19         **THE CLERK:**  Pretrial memorandum?

20         **MS. ANDERSON:**  Maybe pull that up in case that's

21    what it got labeled.

22         **THE CLERK:**  Well, this was filed yesterday though,

23    not the 17th, if that's okay.  Let me see what this one says.

24         **THE COURT:**  Did you find it?

25         **THE CLERK:**  Yes.  Do you want me to print this out?

```
1    Judge, it's Docket 117.

2              THE COURT:  117.  Oh, that was just filed?

3              THE CLERK:  Yesterday, yes.

4              THE COURT:  Oh, okay.

5         MS. ANDERSON:  My apologies.  I was thinking that

6    was Monday, Your Honor.

7              THE COURT:  Hold on.

8              THE CLERK:  Do you want me to print this?

9              THE COURT:  No.  I've probably got that.  I think I

10   printed out what was filed yesterday.  Give me a second.

11        Okay.  Well, I mean, all I can tell you is what I'm

12   looking at in 117 is a stipulation and it first says, "The

13   following files are visual depictions."  And then the next

14   thing on -- then the next thing I've got is, "That the

15   following facts," and it talks about expert witnesses.

16        MS. ANDERSON:  It would be a separate filing,

17   Your Honor.

18             THE COURT:  The next thing I've got is that child

19   pornography...

20        Okay.  Well, if somebody has it, can you just give

21   it to me because, honestly, I don't see it in this file.

22        MS. ANDERSON:  Yeah.  I apologize, Your Honor.  I do

23   not have a printout of it.  We are -- Mr. Livergood is going

24   to get -- make a copy.

25             THE COURT:  Okay.  And you don't need to leave now
```

 1    to get it, but you all have to get this to me or tell me where

 2    it is on the file because I don't see it.

 3            **MS. ANDERSON:**  I expected it was filed, but I'm

 4    thinking, perhaps, maybe it wasn't.  So I do want to make sure

 5    we just get a hard copy of it.

 6            **THE COURT:**  All right.  But, basically, what we are

 7    going to do with respect to that summary, and hopefully, it

 8    is, you know, fairly neutral, and just is, you know,

 9    summarizing the charges that they are going to be hearing

10    about and, you know, should end with the sentence, "The

11    defendant has pleaded not guilty."

12            So I will be using that both in voir dire and in

13    those initial instructions after we select the jury.  So we

14    will plug that summary into two places.

15            And so with respect to the voir dire, I will tell

16    them that they've been called as jurors in this case.  I will

17    read them the summary.  I will ask if anyone knows of that

18    incident or charge.  I will introduce trial counsel.

19            And, Ms. Anderson, are you taking the lead in trial

20    here?

21            **MS. ANDERSON:**  Yes, Your Honor.

22            **THE COURT:**  All right.  So I will introduce each of

23    you and ask you to introduce your clients and anyone else who

24    is at counsel table.

25            Have you had some discussion with Mr. Price with

 1   respect to his clothing for trial?

 2        **MR. HOGAN:**  Your Honor, that has escaped me, but

 3   what I will do is I will reach out to his mom.  And I donate

 4   suits, my own suits even, to -- the federal defender has

 5   clothes.

 6        **THE COURT:**  Right.  I understand that.  I understand

 7   that we have clothes.  But, obviously, if he has some clothes

 8   from his home, you know, that are his clothes, those are going

 9   to probably fit him better.

10        I'm assuming, Mr. Price, that you would prefer to

11   wear street clothes for the trial --

12        **THE DEFENDANT:**  Yes, Your Honor.

13        **THE COURT:**  -- as opposed to what you're wearing?

14        **THE DEFENDANT:**  Yes.  Yes.

15        **THE COURT:**  All right.  So let's make sure that we

16   attend to clothing for trial.  I will expect the defendant is

17   going to be, you know, wearing regular clothing for the trial?

18        **MR. HOGAN:**  Your Honor, his clothes are at his

19   house.  I'm going to reach out to his girlfriend and --

20        **THE COURT:**  Okay.

21        **MR. HOGAN:**  -- I'll talk to her and I'll have her

22   deliver the clothes to my office.

23        **THE COURT:**  All right.  Good.  Good.  All right.

24        And so, in any event, we will do those

25   introductions.  And let me just ask.  Right now, do you have

1   one hand that is chained?  You have both hands chains.

2           **THE DEFENDANT:**  Both hands.  Yes, ma'am.

3           **THE COURT:**  Okay.  Well, we'll have to discuss about

4   that.  Do you have any shackles on your feet?

5           **THE DEFENDANT:**  Yes.

6           **THE COURT:**  Okay.  Well, we'll need to discuss that.

7   All right?  And if there's some reason -- I will check with

8   the marshals to see if there's some particular reason why

9   Mr. Price needs to be shackled, and if not, then -- if so, we

10  will have a skirt around the table.  But you understand the

11  tables will be flipped so that, Mr. Hogan, you and Mr. Price

12  will be at this table, the Government will be at the table

13  closest to the jury.

14          **MR. HOGAN:**  Okay.

15          **THE COURT:**  Do you understand that?  And so if we

16  need it, we will put a skirt around the table.  All right?

17          **MR. HOGAN:**  Yes, Your Honor.  Obviously, they won't

18  have my clients' hands shackled during the trial.

19          **THE COURT:**  Well, that's what I want to --

20          **MR. HOGAN:**  Yeah.

21          **THE COURT:**  -- make sure because I assume that his

22  hands are going to be free --

23          **MR. HOGAN:**  Yes.

24          **THE COURT:**  -- for the trial.  And if the marshals

25  want him shackled, then we're going to need to put a skirt

 1    around the table.  But I don't know what all of the various

 2    options are and so I will explore that with them a bit more

 3    between now and when we start the trial.

 4            And then I will ask whether any of the venire panel

 5    know you or the clients or if you've had any dealings with the

 6    law firms.  And then I will read to them a list of witnesses

 7    or names they are likely to hear in the case.

 8            Now, I know, Ms. Anderson, that you did file in one

 9    of your recent filings a list of names likely to hear, but I

10    don't know, Mr. Hogan, whether you have reviewed that.  So I

11    need to -- I need the parties to both give me those names.

12    And so if you can take a look at Ms. Anderson's list --

13            **MR. HOGAN:**  Your Honor, we've discussed who the

14    witnesses are.

15            **THE COURT:**  Yeah.  But it's not just the witnesses.

16    I also -- you also need to think about whether other people's

17    names are going to be coming up during the trial --

18            **MR. HOGAN:**  Oh, okay.

19            **THE COURT:**  -- in some material fashion.

20            **MR. HOGAN:**  Okay.

21            **THE COURT:**  I mean, and let me just tell you why I

22    do that.  I mean, I've had -- I've had a trial where, in the

23    middle of trial, someone starts talking about some, you know,

24    some relatively important events that happened at this store

25    with this particular person and, you know, I had a juror very

1   upset who, like, needed to talk to me during the break and

2   said, I know that person that they were just talking about.

3   And, you know, she was very worried about the fact that she's

4   hearing this testimony about this person she knows and is she

5   okay to sit on the jury and blah, blah, blah, blah, blah.  So

6   that's what we want to avoid.

7          I will not be suggesting to the jurors that these

8   are people who are going to be witnesses.  I will say, These

9   are people who may be witnesses or whose names you may just

10  hear during the course of the trial.  And so that may include,

11  you know, some -- a bank or, you know, something else.  It may

12  include Charter.  Okay?  And think about the names that are

13  likely to come up during this trial even if those people are

14  not going to be witnesses.

15         And then I need all of those names so that I can

16  read that list and find out whether anyone knows any of those

17  people before we get started and determine whether it's going

18  to be a problem or not.  And so if you would take a look at

19  Ms. Anderson's list and then see if there are any additional

20  names of entities or individuals that are likely to come up

21  during the trial, and if so, please supplement that list.  And

22  I need that by the close of business on Friday.  Okay?

23         **MR. HOGAN:**  Yes, Your Honor.

24         **THE COURT:**  Okay.  And then, you know, I will ask

25  whether they know any of those people, whether they've had any

1    dealings with the entities.  I will ask whether any of the

2    panel members know one another, and if so, whether they would

3    be able to exercise independent judgment.  I will tell them

4    that the case is expected to last three to four days.  Are you

5    all comfortable with that?

6              **MR. HOGAN:**  Yes, Your Honor.

7              **MS. ANDERSON:**  Yes, Your Honor.

8              **THE COURT:**  Okay.  And tell them that we will

9    usually go from 9:00 to 5:00, we could go a little beyond

10   5:00 if we're going to be able to finish up a witness, and

11   that they are going to get about an hour to break for lunch,

12   and that they will also get two -- at least two 15-minute

13   breaks in the morning and the afternoon so that the longest

14   they usually have to sit at any one time is about two hours.

15   All right?

16             Is this the chart?

17             **THE CLERK:**  Yes.

18             **THE COURT:**  Okay.  Great.

19             **THE CLERK:**  Is that acceptable?

20             **THE COURT:**  Good.

21             **THE CLERK:**  Is that okay?

22             **THE COURT:**  Yeah.

23             **THE CLERK:**  That's yours if you want it.

24             **THE COURT:**  All right.  So we're going to give you a

25   chart here to show you how the jurors are going to be seated

1    for the voir dire process.  All right?

2              So then I will ask them, given that schedule,

3    whether there's anybody who'd be unable to serve based upon

4    particular scheduling problems or schedule conflicts they

5    would not be able to reschedule.

6              I will ask if anyone has any physical or medical

7    problems or needs that need to be accommodated, you know, such

8    as you need to take medication at a certain time or any

9    difficulties with hearing that we might be able to

10   accommodate.

11             I will ask them about their prior jury service and

12   if it was civil or criminal and what court it was in and when

13   was it and did they reach a verdict and were they the

14   foreperson and was there anything about that prior jury

15   service that would make it difficult for them to be fair and

16   impartial?  Can they set that aside and approach this case

17   anew.

18             I will ask if any of them or their close friends or

19   relatives has ever been arrested or charged with or convicted

20   of an offense other than a simple traffic violation.  And if

21   yes, is there anything about that situation that might affect

22   their ability to listen to the evidence or come to a fair

23   decision.

24             I will ask if any of them have ever -- they or their

25   close friends have ever been the victim of a crime, and if

1   yes, is there anything about that situation that might affect

2   their ability to listen to the evidence or come to a fair

3   decision.

4          I will advise them of the presumption of innocence

5   and ask if there is anyone who does not understand that a

6   charge is not evidence and simply because a person is charged

7   is no indication of guilt.  I will advise them that the

8   defendant is presumed innocent unless proved guilty beyond a

9   reasonable doubt, that that presumption remains with a

10  defendant until found guilty by a jury, and that the

11  obligation is always on the Government to prove the

12  defendant's guilt, and that there is no obligation on a

13  defendant to prove his or her innocence.  Ask if there's

14  anyone who disagrees with those principles and ask if any of

15  the venire people would find Mr. Price not guilty even if

16  convinced of his guilt beyond a reasonable doubt solely

17  because of feeling sympathy for him.

18         I will advise them that the burden of proof in a

19  criminal case is different than in a civil case.  And in a

20  criminal case, the Government must prove guilt beyond a

21  reasonable doubt, ask if anyone doesn't understand that, ask

22  if anyone disagrees with that principle.

23         I will advise them of the defendant's right to

24  remain silent.  I will ask if anyone is more likely to believe

25  that Mr. Price is guilty if he chooses not to testify.  I will

1   advise them if Mr. Price does not testify, that they may not

2   discuss that during their deliberations or with one another

3   and ask if there is anyone who doesn't understand that or

4   feels that they would be unable to abide by that directive.

5           I will advise them of the evidence and the law, that

6   their job is to decide the case based on the evidence,

7   applying the law as given to them, that I am the judge of the

8   law, they are the judges of the facts, and that it is their

9   duty to follow the law as I give it to them in my instructions

10  even if they disagree with them, and ask if there is anyone

11  who would be unwilling to follow all of the instructions that

12  I give them and if there is anyone who would not be able to

13  decide the case solely on the evidence that's presented to

14  them here in the courtroom.

15          I will advise them that their job is to determine

16  guilt or innocence and not punishment, and that, as jurors,

17  they will be asked to determine if the defendant is guilty or

18  not guilty of the specific offenses charged, and that any

19  issues with respect to punishment are for the judge and make

20  sure that everybody understands that and see if anyone has a

21  problem with that.

22          I will tell them that we are going to pick twelve

23  jurors and two alternates and that their verdict must be

24  unanimous.  And find out if anyone has a problem with that

25  proposition or if they would be unwilling to try and reach a

1   unanimous verdict.

2            And then I will ask them if any of them know of

3   anything that I haven't asked about.  Any experiences in their

4   life that we haven't touched upon that might prevent them from

5   being completely fair and impartial in this case.

6            Now, typically, at this point, I would turn it over

7   to attorney voir dire.  But one of the things that we have to

8   determine is whether you want me to ask some of the questions

9   with respect to the nature of the charges here, and if so,

10  which of those questions.  I know that the Government has

11  filed several of those questions in their proposed voir dire.

12           I think it would make some sense for me to at least

13  advise the jury that the case involves two charges dealing

14  with child pornography and that one of the things that they

15  will be asked to do is view images of child pornography and

16  ask if anyone has any -- feels that, based upon that, they

17  would be unable to be fair and impartial to both sides, does

18  anyone think that they would have any problem sitting as a

19  juror for that reason.

20           Now, I think, at a minimum, I should ask that

21  question to the jurors.  I know that the Government --

22           **MR. HOGAN:**  I agree, Your Honor.  I agree.

23           **THE COURT:**  -- has some more nuanced questions as

24  well.  I thought I would leave the more nuanced questions for

25  you both to pose, but, you know, that's open for discussion.

1   If there are more questions you would like me to ask, I can do

2   that.

3            **MR. HOGAN:**  Your Honor, I'll discuss that --

4            **THE COURT:**  Right now, I would just be doing "that

5   the case involved" and "they will be asked to view."

6            **MR. HOGAN:**  And, Your Honor, today, I'll discuss

7   that with Ms. Anderson and see which questions -- you know,

8   just because I think some of the questions I intend to ask --

9   intended to ask have already been covered by the Government in

10  their proposed instructions.

11           **THE COURT:**  Right.  And the main issue is -- I mean,

12  I didn't, you know, immediately have any objections to any of

13  the proposed voir dire questions that the Government had on

14  its list, but that doesn't mean that you might not have some

15  objections.  And so, you know, if you do have objections to

16  any of the questions, let the Government know so that we can

17  resolve those.

18           And, also, if there are additional questions you

19  want me to ask, you need to let me know that.

20           **MS. ANDERSON:**  Certainly, Your Honor.  And I think

21  as I've looked through the -- I believe there were 40 proposed

22  questions that were filed by the Government.  And these were

23  all questions that it would at least be the Government's

24  proposal that the Court asks, not the parties.

25           **THE COURT:**  Oh, I'm not going to ask all 40 of those

1    questions.

2           **MS. ANDERSON:**  Okay.  I think about, as I went

3    through, I think, of the instructions that you have just kind

4    of went through --

5           **THE COURT:**  I mean, 15 or so of them are -- are

6    duplicating what I will already have covered.

7           **MS. ANDERSON:**  Exactly.  Right.  So I think that

8    gets us down to maybe there might be as many as 20 that might

9    be in here.  And I don't know if the Court would prefer to go

10   over those now or whether the Court would prefer that we

11   confer.  I don't think that the defense has any objection to

12   those.  And, certainly, anything that the Court feels the

13   Court would prefer not to cover, we can address.  But I'd

14   envision, I believe that each side has 20 minutes.  In these

15   types of cases, I can envision that sometimes that 20 minutes

16   may go very quickly with jurors who do want to --

17          **THE COURT:**  But, Ms. Anderson, let me ask you.  Are

18   you proposing that I ask all those questions because you're

19   trying to maximize your 20 minutes or because there's some

20   reason that you think that question needs to be asked by the

21   Court rather than by you?

22          **MS. ANDERSON:**  I think, Your Honor, that some of

23   these are probably better for the Court.  Some probably could

24   be left to the attorneys.  And if it's the Court's preference,

25   certainly --

1          **THE COURT:**  I mean, the 20 minutes is a guide.  I'm

2     not going to cut you off at 20 minutes.

3          **MS. ANDERSON:**  Okay.

4          **THE COURT:**  I can't even know how much time any one

5     juror might eat up in answering questions.  So the 20 minutes

6     is a guide.  It is not, you know, some hard rule.  And is

7     there some reason why you don't want to conduct voir dire?

8          **MS. ANDERSON:**  No.  Absolutely not.  No.

9          **THE COURT:**  Okay.  So I need you to -- recognizing

10    the questions I've already told you I am going to be asking, I

11    need you to review your list and let me know which of those

12    questions you really want to have the Court ask rather than

13    you.  All right?

14         **MS. ANDERSON:**  Certainly, Your Honor.

15         **THE COURT:**  Because some of those questions have a

16    little touch of advocacy to them.  I don't want to ask

17    questions that --

18         **MS. ANDERSON:**  Sure.

19         **THE COURT:**  -- have a touch of advocacy to them.  I

20    think that's your job.

21         **MS. ANDERSON:**  Sure.

22         **THE COURT:**  All right?

23         **MS. ANDERSON:**  Sure.

24         **THE COURT:**  All right?

25         **MS. ANDERSON:**  Yeah.  And I do believe with that

 1    clarification, Your Honor, and thank you for that, that

 2    everything that remains that you haven't already touched on is

 3    a question that can be asked by a counsel.  And now that I

 4    know that we will have maybe a little more room to ask some of

 5    these, I think that we'll be just fine.

 6         **THE COURT:**  I just -- you know, I give the 20-minute

 7    guide because I don't want you to think that we're going to be

 8    sitting there -- sitting here doing 3 hours per side --

 9         **MS. ANDERSON:**  Certainly.

10         **THE COURT:**  -- on voir dire.  I mean, the idea is to

11    try to get the process completed by lunch.  But chances are,

12    with 50 jurors out here, it isn't going to happen anyway.

13         **MS. ANDERSON:**  Right.

14         **THE COURT:**  All right?

15         **MS. ANDERSON:**  Right.

16         **THE COURT:**  I mean, let's just be -- let's just be

17    honest about that.  With 50 jurors, the chance that we are

18    going to get voir dire completed by lunchtime is not great.

19    All right?

20         **MS. ANDERSON:**  Certainly, Your Honor.  The only

21    other thing that I might ask, Your Honor, is should there be

22    victims who indicate any reservation about talking about

23    something that might be more sensitive, like someone who has

24    been accused of a sex offense or they have been a victim,

25    before I say something that would not be what the Court would

1    want, can we invite them to discuss that at sidebar?

2            **THE COURT:**  I will tell them.

3            **MS. ANDERSON:**  Okay.

4            **THE COURT:**  I will tell them that in my introduction

5    to the voir dire.  I will tell them that, you know, we need

6    them to answer fully and honestly and they need to keep their

7    voices up.  But I will also tell them that if there are any

8    particular questions that the find, you know, particularly

9    embarrassing or difficult to respond to in this large of a

10   setting that they can request to come forward and that we will

11   address it at sidebar with just the attorneys and the Court.

12   All right?

13           **MS. ANDERSON:**  Yes.  Thank you, Your Honor.

14           **THE COURT:**  So they will be told that at the outset.

15           **MR. HOGAN:**  Can I ask a question, Your Honor?

16           **THE COURT:**  Uh-huh.

17           **MR. HOGAN:**  So when the Court's asking voir dire

18   questions, if we get responses -- if the venire panel person

19   responds to you, would we sometimes have an opportunity to

20   question that person?

21           **THE COURT:**  Yes.  I mean, overall, you're not going

22   to interrupt at that moment and follow up, but just make a

23   note of it and you will have the opportunity to follow up.

24           **MR. HOGAN:**  Okay.

25           **THE COURT:**  I'm going to be asking the questions to

1   the panel as a whole.  I'm going to do the follow-up that I

2   believe is appropriate with those witnesses.  There may be

3   more follow-up that you want to do and that's perfectly fine.

4   So while the rules are that you ask your questions to the

5   panel as a whole -- and can we get that clock fixed?  Is that

6   time -- oh, no.  That time is right.  Sorry.

7          While I'm going to ask that you ask the questions to

8   the panel as a whole and then follow up, you are going to be

9   free to follow up both on responses to my questions as well as

10  responses to the Government's questions.  All right?  You

11  can't sidle up to Juror No. 11 and say, So, tell me about

12  yourself.  What magazines do you read?  And da, da, da, da,

13  da.  We're not going to do that.

14         **MR. HOGAN:**  I understand.

15         **THE COURT:**  You are going to pose these more generic

16  questions as a whole to the panel and then you are going to

17  ask any appropriate follow-up questions regardless of who

18  originally posed the more general question.  Does that make

19  sense?

20         **MR. HOGAN:**  Yeah.  I needed to find out the order

21  you wanted to do it and I get it.

22         **THE COURT:**  All right?

23         **MS. ANDERSON:**  Yes, Your Honor.  Thank you.

24         **THE COURT:**  All right.  Good.  And so I think that

25  kind of covers just the voir dire questioning itself.  The

1   only other thing that I want to say to you is even though we

2   are not asking individual questions of any particular jurors,

3   I don't expect anybody to take a bump on a log.

4           There are always some jurors who have said nothing.

5   They haven't had a positive response to any of the questions

6   that have been asked.  And at the end of the -- so you are

7   going to be free to the extent that there has been nothing

8   responded to, to pull out one of the questions that's been

9   asked if you want and say, Now, you know, Juror No. 10 -- and

10  I am going to ask you to refer to them for the record by their

11  jury number rather than their names.  Okay?  Even if you're

12  very adept at memorizing everybody's names.  We're not doing

13  that.  So you will refer to them by the number that they are

14  wearing.  But you will, of course, have the list that

15  correlates their name.

16          You're free to say, Juror No. 10, you know, I don't

17  know that we've heard anything from you today.  You know, and

18  ask something very generic.  Is there anything about -- or

19  pick out one of the questions that was asked previously and

20  ask that of them.  But I will pull you up -- you can do that

21  in your examination or you can wait till all of the

22  questioning is completed.  Because, of course, some of those

23  folks may say something in response to the questions that

24  defense counsel poses.  I will pull you up here at the end of

25  the voir dire questioning.  I will let you know which jurors I

1    believe have not responded to anything.  I will give you the

2    option to ask some follow-up questions to those jurors, or if

3    you wish, I can ask follow-up questions to them.

4              I can just say, you know, Juror No. 10, I don't

5    think that we've heard from you at all, and I can, you know,

6    kind of reframe a few of the questions that have already been

7    asked to that juror.  But I will give you that option up at

8    the -- up at the bench.  All right?  And if you decide that

9    you want to ask those questions yourself, what I will say is,

10   There are a few of you that we haven't heard from at all and

11   the attorneys are going to just ask you a couple of questions.

12   All right?

13             **MR. HOGAN:**  Yes, Your Honor.

14             **THE COURT:**  But you'll have that option.  Most of

15   the lawyers usually choose to have me ask the questions, but I

16   don't really care one way or the other.  All right?

17             So that's kind of the process that we will use for

18   voir dire.  Anybody have any questions about that?

19             **MS. ANDERSON:**  My only question, Your Honor, is

20   would the Court prefer that the attorneys make motions to

21   strike for cause as we go along or save all those and present

22   them to you at the end?

23             **THE COURT:**  No.  I would prefer that you save them.

24   However, if you believe that there is a juror who is poisoning

25   the well, then do ask to approach and we will address that

1    juror right then and there.  And, at a minimum, I will tell

2    you whether I'm going to strike that juror for cause and

3    whether you need to direct any further questioning to them.

4              I'd prefer not to say, Juror No. 10, you're excused,

5    and let them leave, because I don't want all the other jurors

6    sitting there going, What did they do that they're not here

7    anymore, and can I do that, too?  Okay?  You with me?

8         **MS. ANDERSON:**  Yes, Your Honor.  Thank you.

9         **THE COURT:**  So, generally, I'll tell you that we

10   don't need to, you know, ask questions of them anymore.  And,

11   often, what happens is that person would be responding to

12   something similar, giving the same information, and you can

13   just say, you know, Thank you, Juror No. 10.  We understand

14   that based on your prior response.  All right?

15        **MR. HOGAN:**  Yes, Your Honor.

16        **MS. ANDERSON:**  Yes, Your Honor.  Thank you.

17        **THE COURT:**  Okay.  And so, then, what will happen is

18   I will call you all up.  We will excuse the jurors and we will

19   exercise strikes.  I am going to ask both parties to,

20   basically, decide on your strikes for cause simultaneously.  I

21   will ask you both to give me your lists of proposed strikes

22   for cause.  Often, there's some duplication and we don't have

23   to spend a lot of time on those folks that both parties

24   believe should be stricken for cause.

25             And then after I make a determination with respect

1    to strikes for cause, I will leave you all be to exercise your

2    peremptory strikes.  Of course, the defendant gets ten and the

3    Government is going to get six.  And then you will each get

4    one more with respect to the -- with respect to the

5    alternates.  All right?

6           And, you know, exactly how that will play out, and

7    maybe if I give you a little bit more with respect to the

8    alternates would depend on how many strikes for cause we've

9    had.  You will exercise your peremptory strikes from the

10   jurors who are remaining that we need.  All right?

11          And so, obviously, what we're going to need at the

12   end of the day is we're going to need fourteen jurors, right,

13   and then we're going to have the sixteen for the exercise of

14   the peremptory strikes.  And then if we have two alternates,

15   and then two more with respect to the peremptories for the

16   alternates -- you with me still? -- then we're going to need

17   32 jurors in order for you all to exercise your peremptory

18   strikes.

19          And assuming that we have eight strikes for cause,

20   then you will exercise your peremptory strikes out of the

21   first 40 jurors who are still remaining.  So if we only had

22   eight strikes for cause, we're still going to have, you know,

23   five, six, seven, eight, you know, maybe ten jurors still out

24   there.  Right?

25          **MR. HOGAN:**  Yep.

 1              **THE COURT:**  And you don't have to mess with those.

 2    You will exercise those strikes from the group that we need to

 3    select our jury.  And so we may not be looking at Jurors, you

 4    know, 45 through 50 at the end of the day unless we end up

 5    having more than eight strikes for cause.  Does that make

 6    sense?

 7              **MR. HOGAN:**  It does, Your Honor.

 8              **MS. ANDERSON:**  Yes, Your Honor.

 9              **THE COURT:**  Okay.  And so then, you know, when you

10    all have done your peremptories, the Government's going to

11    exercise its peremptory strikes.  Give that list to the

12    defendant.  Then the defendant will exercise his peremptory

13    strikes.  And when you all are done, you'll let Kelley know

14    and then I'll come out and we will review the strikes.

15    All right?

16              **MR. HOGAN:**  Yes, Your Honor.

17              **THE COURT:**  And decide who our last -- who our final

18    jurors are going to be.  All right?

19              And then we will, you know, bring our jury in and we

20    will seat them and administer the oath.  And then I will read

21    the introductory instructions and I will read -- I now have

22    your summary of the case.  I haven't read it yet.  Give me

23    just a moment.

24              Okay.  And this summary looks fine to me --

25              **MR. HOGAN:**  Yes, Your Honor.

1        **THE COURT:**  -- if it's all right with both of you.

2        Okay.  And so I will re-read this summary as the

3   nature of the case.  I then read 1.03, which is the evidence,

4   1.05, credibility of the witnesses, and 1.06, telling them

5   that they will have no transcripts.

6        I will tell you that I do permit the jurors to take

7   notes.  I have, kind of, my own note-taking instruction.  I

8   can give it to you if you all want to see it.  I just added a

9   little bit more language to the Eighth Circuit instruction.

10  And I don't remember where I got that language from anymore.

11  But, basically, advising them that they shouldn't let their

12  note-taking distract them from viewing the witnesses and the

13  evidence and that they must remember the evidence and that

14  they have to remember that themselves and that they cannot

15  cede that responsibility to somebody else who may be taking

16  notes.  So that's the change I made to the note-taking

17  instruction.

18       I will talk to them about bench conferences, 1.07,

19  1.08, conduct of the jury, and then 1.09, the outline of the

20  trial.  So all but the note-taking instruction is straight

21  out.

22       I don't typically do a 1.02, the elements of the

23  charge, but I can if you want me to.  I find it helpful in

24  very complicated cases, cases that have complicated charges

25  where there might be some real subtleties that the jury might

 1   need to be listening to.  But I don't think that applies here.

 2   But if anybody wants me to give a charge on the elements, I

 3   can.  Anybody want that?

 4            **MR. HOGAN:**  I don't, Your Honor.

 5            **MS. ANDERSON:**  No, Your Honor.

 6            **THE COURT:**  All right.  So we're going to skip 1.02.

 7   And then I know that multiple stipulations have been filed,

 8   but they didn't really seem to be stipulations of fact.  They

 9   seemed to be more stipulations that are laying evidentiary

10   foundational elements.

11            Now, I think the only ones where that is not true is

12   the stipulations that certain things did, in fact, travel in

13   interstate commerce, and then the stipulation that the

14   telephone was manufactured --

15            **MR. HOGAN:**  Manufactured in South Korea, Your Honor.

16            **THE COURT:**  -- out of the country.  So how do you

17   want to handle those stipulations?  Do you want me to read

18   some or all of those stipulations to the jurors or do you want

19   to handle that during the course of your examination?

20            **MR. HOGAN:**  I would prefer the Court read them.

21   Like, if the stipulation applies to a specific witness,

22   Your Honor, before that witness testifies, I'd say I'd ask you

23   to read that stipulation so it keeps it -- so they understand

24   who it belongs to.

25            **THE COURT:**  Okay.  And we'll have to talk about that

 1  because some of those relate to a particular witness, but some

 2  are more --

 3          **MR. HOGAN:**  Generic.

 4          **THE COURT:**  -- evidentiary related and not witness

 5  related.  So, for instance, we've got -- hold on.  Let me see

 6  if I can get to that.

 7          **MR. HOGAN:**  Your Honor, may I use the restroom real

 8  quick?

 9          **THE COURT:**  Certainly.

10          **MR. HOGAN:**  I'll be right back.

11          **(Off the record.)**

12          **THE COURT:**  Okay.  So for instance, just looking at

13  the stipulation that's 117-1, it is that the following files

14  are visual depictions of child pornography that have been

15  mailed, shipped, or transported in interstate or foreign

16  commerce.  And I am assuming that the stipulation is both

17  stipulating to the fact, one, that it is an image of child

18  pornography, and two, that it was, in fact, shipped or

19  transported in interstate or foreign commerce.  Did you intend

20  the stipulation to be with respect to both of those aspects?

21          **MR. HOGAN:**  Yes, Your Honor.

22          **MS. ANDERSON:**  Yes, Your Honor.

23          **THE COURT:**  All right.  And so when would you like

24  me to do -- to address those stipulations?

25          **MS. ANDERSON:**  Your Honor --

1              **THE COURT:** And --

2          **MS. ANDERSON:** Oh, I'm sorry. I didn't mean to cut

3    you off.

4              **THE COURT:** That's all right.

5          **MS. ANDERSON:** Your Honor, I would propose that the

6    stipulation with regard to the specific files of child

7    pornography being, in fact, child pornography and having been

8    transported in interstate commerce be read by the Court

9    immediately prior to Investigator Donya Jackson taking the

10   stand. She will be presenting -- she will be the discussing

11   that evidence. So I think it would give the jurors the best

12   context to understand that stipulation at that point.

13             **THE COURT:** Okay. And is that okay with you,

14   Mr. Hogan?

15         **MR. HOGAN:** Yes, Your Honor. That makes sense.

16             **THE COURT:** All right. And then -- and then we've

17   got the stipulation which is 117-3. And that has to do with

18   them being real minors. And do you want that also read before

19   Donya Jackson or is there a different time where you want that

20   read?

21         **MR. HOGAN:** I would like them all read at once,

22   Your Honor, at that point. I think it would be -- that would

23   be my preference.

24         **MS. ANDERSON:** I would concur with regard to the

25   stipulations about the child pornography. The expert

 1   stipulations, I might suggest, that --

 2            **THE COURT:**  I would do that one before each witness.

 3            **MS. ANDERSON:**  Correct.  Yes.

 4            **THE COURT:**  But I'm talking strictly about 117-1 and

 5   117-3, the first being "This is child pornography and it was

 6   transported in interstate commerce," the second being "These

 7   are real children."

 8            **MS. ANDERSON:**  Correct.  Yes.  I think those could

 9   both be read to the jury prior to the testimony of

10   Investigator Jackson.

11            **THE COURT:**  Okay.  So I will do 117-1 and 117-3.

12   And, you know, just so you know, I mean, the other option

13   would be for you to do that in connection with your own

14   examination so that you could say -- you know, you could stop

15   and say to the jury, you know, I'm now going to read a

16   stipulation reached by the parties and you could read that and

17   then I would give the instruction during -- for use during

18   trial that says they've just heard these stipulated facts and

19   they should accept them as true.  So those are the two

20   options.  One is for me to read it and the other is for you to

21   read it.  And I don't care which it is.  It's totally up to

22   you.

23            **MR. HOGAN:**  I'd prefer the Court, Your Honor.

24            **MS. ANDERSON:**  I would concur with that, Your Honor.

25            **THE COURT:**  That's fine.  Happy to do that.

1              Now, I just want to tell you, I've usually got a lot

2    of things running around in my head when we're in trial, too,

3    so you may need to remind me.  You may need to say, Judge, can

4    we read the stipulation to the jury?  And then that will

5    remind me that I need to read 117-1 and 117-3.  Okay?

6              **MS. ANDERSON:**  Certainly, Your Honor.

7              **MR. HOGAN:**  Yes, Your Honor.

8              **THE COURT:**  All right.  And so if I forget that, I

9    need you guys to remind me because I could forget it.

10             All right.  So that's about where we are.  In terms

11   of your opening statements, does the defendant know at this

12   point in time whether you wish to give your opening statement

13   at the outset or reserve?

14             **MR. HOGAN:**  Your Honor, I always give it at the

15   outset.

16             **THE COURT:**  I'm sorry?

17             **MR. HOGAN:**  I always give it at the outset.

18             **THE COURT:**  Okay.  Great.  So both parties will be

19   giving their opening statements.  And I don't see any

20   stipulations of fact that I should be reading before the

21   opening statement.  Is that correct?

22             **MS. ANDERSON:**  I would agree with that, Your Honor.

23             **MR. HOGAN:**  Yes, Your Honor.

24             **THE COURT:**  All right.  But, obviously, you all know

25   what the stipulations are so you will both be free in your

 1   opening arguments, if you so desire, to advise the jurors that

 2   certain facts will be stipulated so long as they are matching

 3   the written stipulations I'm going to be reading.  You with

 4   me?

 5            **MR. HOGAN:**  Yes, Your Honor.

 6            **MS. ANDERSON:**  Yes, Your Honor.

 7            **THE COURT:**  All right.  So you'll be free to say to

 8   them, There are certain things that you will not have to

 9   decide because you will be told by the Court that they are

10   stipulated to and you may accept them as true.

11            So how long do you -- tell me how long you want for

12   your opening and then I'll tell you how long you get.

13            **MS. ANDERSON:**  I would propose 20 minutes,

14   Your Honor.

15            **MR. HOGAN:**  Yes, Your Honor.  I concur.

16            **THE COURT:**  Okay.  It's a lot.  But if you all are

17   going to work really hard to get the trial done in three days,

18   I'll let you have that.

19            **MS. ANDERSON:**  Thank you, Your Honor.

20            **MR. HOGAN:**  Thank you, Your Honor.

21            **MS. ANDERSON:**  And if I might inquire, does the

22   Court have a practice of a 3-minute and a 1-minute or a

23   5-minute in terms of letting us know how close we're getting?

24            **THE COURT:**  That's up to you.

25            **MS. ANDERSON:**  Okay.

1      **THE COURT:**  If you want a warning, then let us know.

2  I will tell you, I don't put, like, a major stopwatch on your

3  opening.

4      **MS. ANDERSON:**  Okay.

5      **THE COURT:**  I mean, if you run over by 30 seconds,

6  I'm not going to cut you off.  But 20 minutes is a long time

7  for this case.  You don't need 20 minutes.  But I will put a

8  stopwatch on you on your closing.  But I do not do that on

9  your opening.  All right?

10      **MS. ANDERSON:**  Thank you.

11      **THE COURT:**  And then we will go to the Government's

12  case-in-chief and cross and redirect and we'll go from there.

13  Just know that I am not a big fan of recross.  All correct?

14  Don't assume that you're going to be saving some great zingers

15  for recross because I will limit your recross to something

16  that truly was just raised by the redirect.  So recross should

17  exist to you more theoretically than in reality.  Okay?

18      **MS. ANDERSON:**  Certainly, Your Honor.

19      **THE COURT:**  All right.  And then after the

20  Government finishes its case-in-chief, we will, of course,

21  turn to the defendant and we will make a record outside the

22  hearing of the jury with respect to whether Mr. Price wishes

23  to testify.  Okay?

24      **MR. HOGAN:**  Yes, Your Honor.

25      **THE COURT:**  And then we'll go.  Anybody have any

 1  questions about, you know, the process that we're going to use

 2  to conduct the trial?

 3          **MR. HOGAN:**  No, Your Honor.

 4          **MS. ANDERSON:**  My only question, Your Honor, is what

 5  is the Court's feeling about water at the counsel table?  Is

 6  that -- is that permissible?

 7          **THE COURT:**  Well, of course.

 8          **MS. ANDERSON:**  Okay.

 9          **THE COURT:**  Yes.

10          **MS. ANDERSON:**  Just making sure.

11          **THE COURT:**  And we'll have water available for the

12  witnesses and Kleenex and whatever else anybody might need.

13  All right?

14          Now, obviously, folks, I want to keep -- keep bench

15  conferences to a minimum.  All right?  I don't want you all

16  running up here all the time.  If you have some evidentiary

17  objections, please make them succinctly.  Do not give me

18  objections in a paragraph.  Usually, a word or two will do.

19  If I need more information with respect to your objection, I

20  will elicit it from you.

21          I do want you to, generally, stay in the area of the

22  podium.  Nobody's going to be sidling up to the jury box while

23  you're examining witnesses.  Now, as you probably already

24  know, Mr. Hogan, we have sightline problems in our courtroom.

25  We did mock-ups.  I don't know how we ended up with sightline

1   problems, but we have them.  You may have problems seeing the

2   witness from counsel table.  And if you do, then you should

3   get up and move to wherever you would like to.  So you may

4   move to --

5          **MR. HOGAN:**  Your Honor, I normally -- if I have

6   issues, I usually sit at the middle table where I can see with

7   my notes.

8          **THE COURT:**  You don't need my permission to do that.

9          **MR. HOGAN:**  Okay.

10          **THE COURT:**  You can just do it.  Or you can ask

11   permission --

12          **MR. HOGAN:**  Okay.

13          **THE COURT:**  -- if you, you know, don't want the jury

14   wondering why you're moving.  And that is totally up to you.

15   And so you move as you need to.

16          Given that we are dealing with a child pornography

17   case here, we will be switching how the monitors are set up.

18   The monitors will be set up so that you can't have it like

19   that.  It needs to be turned more so that only those at the

20   table can see it.  All right?  You with me?

21          **MS. ANDERSON:**  Yes, Your Honor.

22          **THE COURT:**  Because I don't want anyone who is

23   sitting right there in the benches to be able to see what's on

24   the monitor.  And I don't know what we do about the monitor

25   that is on the lectern.

1          **THE CLERK:**  Which monitor?  I'm sorry.

2          **THE COURT:**  That's on the lectern.  Right.

3          **THE CLERK:**  Oh.  We -- it shows it.

4          **THE COURT:**  I mean, that's --

5          **THE CLERK:**  I think that with an attorney standing

6    there, it kind of blocks.

7          **THE COURT:**  Okay.  Well, we'll have to play with

8    that a little bit and see.  But we're going to take the big

9    screen and we're going to move it to the other side.

10         **THE CLERK:**  Okay.

11         **THE COURT:**  All right?

12         **THE CLERK:**  Yep.

13         **THE COURT:**  And then we're not going to be able to

14   put a little one on this side.  All right?  Everybody

15   understand?

16         **MR. HOGAN:**  Yes, Your Honor.

17         **MS. ANDERSON:**  Yes, Your Honor.

18         **THE COURT:**  All right.  So I did not see any

19   exhibit lists.  Have exhibit lists been exchanged?

20         **MR. HOGAN:**  Not at this time, Your Honor.  But we do

21   have in the stipulations, I think the exhibit lists, at least,

22   will mirror some of the stipulations, obviously, because

23   there's images.

24         **THE COURT:**  Okay.  We need exhibit lists, folks.  So

25   when's the Government going to have its exhibit list?

1      **MS. ANDERSON:**  Your Honor, I had intended to provide

2  that when the trial starts.  If the Court needs it ahead of

3  time, I can do that if there's a better date.

4      **THE COURT:**  Well, how would the defendant know if

5  he's objecting to any of your exhibits?

6      **MS. ANDERSON:**  We will be showing them to defense

7  counsel.

8      **THE COURT:**  All right.  I want an exhibit --

9      **MS. ANDERSON:**  I have, in fact, shown -- shown them.

10      **THE COURT:**  I want an exhibit list on Friday.

11      **MS. ANDERSON:**  Friday?  Okay.

12      **THE COURT:**  And I need to get any objections to

13  those exhibits also filed by Friday.  We're not going to first

14  start taking that up at the start of our trial.  All right?

15  So you need to get the exhibit list to the defendant in time

16  for the defendant to file any objections to your exhibit list

17  by Friday so that I can take a look at those objections.

18  We're not going to start this trial with an argument --

19  one-hour argument about objections to exhibits.  That's all

20  going to be taken care of before we start.  All right?

21      **MS. ANDERSON:**  Yes, Your Honor.

22      **THE COURT:**  And just in terms of your own

23  appearances, we will start at 9:00 each day, but I need you

24  all here at 8:30 every day.  We will take up anything that

25  needs to be taken up at that time.  If we have nothing to take

```
 1   up, I'll come out and we'll make a record of that and then
 2   I'll leave you be until 9:00.  All right?
 3             MS. ANDERSON:  Yes, Your Honor.
 4             MR. HOGAN:  Yes, Your Honor.
 5             THE COURT:  All right.  And I know that -- in
 6   addition to objections, I need to know if there are any
 7   further stipulations with respect to exhibits.  So if -- I
 8   know the stipulations that you've got right now are addressing
 9   evidentiary aspects of those documents but -- from a
10   substantive standpoint.  But I also need to know if there are
11   stipulations with respect to foundation.
12             So if, you know, the Government has some other
13   documents that are not things -- stipulations that we're
14   reading to the jury, but the defendant doesn't have any
15   objections to those documents and is stipulating to the
16   foundation, then I need to know that as well.  I need to know
17   that by Monday morning.  All right?  So that we all know that
18   with respect to, you know, Exhibits 10, 12, 14, and 22, the
19   defendant has stipulated that it can come into evidence and
20   then we don't need to waste time laying foundation for the
21   admission of that exhibit.  And you can just, you know, put it
22   down and start talking about it with the witness and you can
23   say, you know, I'm going to show you Exhibit No. 12.  Its
24   admission has been stipulated to by the parties.  All right?
25             MS. ANDERSON:  Yes, Your Honor.
```

1          **THE COURT:**  And I will know that we don't need to

2    lay any further foundation with respect to those.  So let me

3    know those stipulations to exhibits by Monday morning.

4          In terms of your opening statements, you may use

5    exhibits in your opening statements, but only by agreement of

6    opposing counsel.  All right?  So if you want to do that, then

7    you may.

8          Generally, I do not send the exhibits back to the

9    jury unless they ask for them.  And if they ask for them, I

10   send back the exhibits they've asked for.  Obviously, we will

11   not be sending the child pornography back to them so if they

12   want to view the child pornography, we will bring them into

13   the courtroom to view it.  All right?

14         **MS. ANDERSON:**  Yes, Your Honor.

15         **THE COURT:**  Now, generally, I don't read the

16   indictment to the jury.  I don't read that in my opening

17   instructions.  I know you've got that in your closing.  I

18   don't remember if you had in your opening, in your initial or

19   your closing.

20         **MS. ANDERSON:**  And I do concur, Your Honor, with not

21   reading the indictment in this case.

22         **THE COURT:**  All right.  So, I mean, we can talk

23   about what happens with the closing instructions, you know, a

24   little bit later in the case.  I assume that we have -- first,

25   do we have any audiotapes?

1              **MS. ANDERSON:**  No, Your Honor.

2              **THE COURT:**  All right.

3              **MS. ANDERSON:**  Just the audio video, Your Honor --

4              **THE COURT:**  I assume we have --

5              **MS. ANDERSON:**  -- but not purely audio.

6              **THE COURT:**  -- some videotapes?  We have videotapes?

7              **MS. ANDERSON:**  Yes, Your Honor.

8              **THE COURT:**  How many videotapes are you all planning

9     to show to the jury?

10             **MS. ANDERSON:**  I think that there would be a

11    possibility of as many as four videos being played to the

12    jury.

13             **THE COURT:**  All right.  And are you planning to show

14    portions or the entirety of those videos?

15             **MS. ANDERSON:**  Three of those videos, Your Honor,

16    will be videos of child pornography.  And two of them, we will

17    show in their entirety.  One of them, we plan to -- it is a

18    video of approximately three and a half minutes that we intend

19    to kind of skip through as it's being played.  We will sort of

20    skip forward on it rendering a publication probably in the

21    area of about 30 to 35 seconds of that video that would

22    actually be published to the jury.

23             **THE COURT:**  All right.  And just discuss with

24    Mr. Hogan, in general, you know, how you're planning to show

25    that video.

 1              **MS. ANDERSON:**  Yes.  We have had those

 2    discussions --

 3              **MR. HOGAN:**  We've covered that, Your Honor.

 4              **MS. ANDERSON:**  -- and I believe we're in concurrence

 5    on how that will go.

 6              **THE COURT:**  All right.  Great.

 7              **MS. ANDERSON:**  I'm happy to make a record of that at

 8    this time or later if the Court would prefer.

 9              **THE COURT:**  No.  That's fine.  If you all are in

10    agreement with what's going to be played, that -- that's fine.

11              And are there any -- other than videos of child

12    pornography, do we have any other videos?

13              **MS. ANDERSON:**  There is a video, Your Honor, of a

14    statement made by the defendant to the police.  At this time,

15    I do not intend to introduce that in the State's case -- or

16    the Government's case-in-chief.  It certainly could be

17    something that ends up becoming rebuttal evidence or, perhaps,

18    even during cross-examination.

19              **THE COURT:**  Okay.  All right.  And I assume you've

20    seen that, Mr. Hogan?

21              **MR. HOGAN:**  Yes, Your Honor.

22              **THE COURT:**  All right.

23              **MR. HOGAN:**  There's also -- I was provided a

24    transcript --

25              **THE COURT:**  All right.  We'd have a little problem

 1   here if you hadn't seen that.

 2          **MR. HOGAN:**  Oh, yeah.  No, Your Honor.  And I've --

 3   I've been provided a transcript of that which my client and I

 4   both have reviewed.

 5          **THE COURT:**  All right.  And that was going to be my

 6   next question.  That video, does it have the transcription on

 7   the video itself?

 8          **MS. ANDERSON:**  It does, Your Honor.

 9          **THE COURT:**  All right.

10          **MS. ANDERSON:**  Well, portions of it.  Portions that

11   the Government anticipates at this point we might use do have

12   the transcription at the bottom.  The entire video, which is

13   probably over an hour, does not.  I don't anticipate that we

14   would be playing it from beginning to end, that entire over an

15   hour, but the excerpts that the Government foresees might be

16   applicable, do have the transcript embedded.

17          **THE COURT:**  All right.  And have you -- have you

18   transcribed the entire video?

19          **MS. ANDERSON:**  Yes.

20          **THE COURT:**  And has that been provided to Mr. Hogan?

21          **MS. ANDERSON:**  It has.

22          **MR. HOGAN:**  Yes, Your Honor.

23          **THE COURT:**  Any problems with the transcript?

24          **MR. HOGAN:**  Your Honor, and we've already worked

25   this out ahead of time, but in this video, there are certain

1    statements made by my client and by law enforcement which

2    would be inadmissible in a court of law.  Namely, Your Honor,

3    regarding lie detector tests and previous allegations of

4    certain conduct.  The Government and I have both -- we agree

5    we would -- if any portions of the video were played or if we

6    choose to allow them to see the transcript, we would just

7    block out those sections, Your Honor, which relate to

8    inadmissible testimony.

9            **THE COURT:**  All right.  All right.  So long as you

10   all are in agreement with respect to what's going to be

11   excised from that.  And, obviously, it's going to be the

12   proponent's job to make sure that you are getting to those

13   portions and skipping over the other portions and doing that

14   efficiently.  Yes?

15           **MS. ANDERSON:**  Yes, Your Honor.

16           **MR. HOGAN:**  Yes, Your Honor.

17           **THE COURT:**  All right.  But as to the transcription

18   itself of the audio, any objection to that --

19           **MR. HOGAN:**  No, Your Honor.

20           **THE COURT:**  -- transcript itself?

21           All right.  All right.  And do we have any

22   depositions, documents, or evidence from other cases?

23           **MR. HOGAN:**  No, Your Honor.

24           **MS. ANDERSON:**  No, Your Honor.

25           **THE COURT:**  All right.  And so I'm going to ask the

 1   Government -- I'm going to need a witness list from the
 2   Government as well.  I'm going to ask the Government to
 3   disclose the witnesses that it anticipates calling on the
 4   first day of trial to the defendant in advance of the first
 5   day of trial.  I will ask you all at the close of each day to
 6   advise opposing counsel of the witnesses that you intend to
 7   call, and, generally, in what order, so that they know and can
 8   get prepared.
 9            In terms of your witnesses, they need to be here.
10   All right?  They need to be here before they might be called
11   and not after they might be called.  I will tell you that most
12   of my trials run much more quickly than the parties
13   anticipated they would.  We tend to move pretty efficiently.
14   And I do not want the jury to be waiting and for all of us to
15   be waiting because you told Officer Joe Blow that he didn't
16   need to be here until 1:00.  All right?
17            If someone is going to be cooling their heels, it's
18   going to be Officer Joe Blow and not this entire courtroom.
19   Okay?  So make sure that your witnesses are here well in
20   advance of when they might be called because I tend to be
21   very, very patient in trial.  But one of the few things that
22   just makes me testy is when we have to recess our trial
23   because your witness isn't here because you told them they
24   didn't need to be here yet.  So don't do that.  Okay?
25            **MS. ANDERSON:**  Yes, Your Honor.

1          **THE COURT:**  All right.  So I prefer you not call

2     witnesses by their first names.  I prefer that you use

3     surnames.  I just think there's a certain level of decorum

4     that's appropriate in the courtroom.  But, obviously, you may

5     refer to your own clients as you please.  And so, obviously,

6     Mr. Hogan, if you want to refer to Mr. Price by his first

7     name, you are welcome to do so.  But that does not allow

8     opposing counsel to do the same.

9          So I know that the Government has filed its proposed

10    jury instructions.  And, Mr. Hogan, I need you to start taking

11    a look at those because I'm going to ask you on the first --

12    at the end of the first day of trial whether you have any

13    objections to any of them because I want to start working on

14    those right away.

15         **MR. HOGAN:**  Yes, Your Honor.

16         **THE COURT:**  If there are any other objections that

17    are being proposed by the defendant -- instructions, rather --

18    we need those.  You need to provide those.  And then I need to

19    have those instructions provided to Sara either on disk or to

20    send her a Word version of them by e-mail.  And that needs to

21    be done by Monday morning.  Okay?

22         **MR. HOGAN:**  Yes, Your Honor.

23         **THE COURT:**  All right.  And then if we can get

24    those, we will start working on them the first day of trial

25    and try to get them finalized as soon as we can.  I will take

1   the laboring oar of implementing any changes that need to be

2   made as we go along if, in fact, you provide them to me in a

3   timely manner and provide Word copies to Sara.  If you don't,

4   then it is going to be your job to create the final draft of

5   the jury instructions.

6             I do send the full set of jury instructions to the

7   jury and we will send a copy for each juror.  And then one

8   copy will have the verdict form that will be tabbed for the

9   foreperson.  I, generally, also display them to the jurors as

10  I read them.  Okay?

11            And so I will read all of those instructions prior

12  to your closing argument other than the final instruction.

13  I'm going the have the last word.  All right?  So I will read

14  all of the instructions other than the final instruction.  You

15  will then do your closing argument.

16            Obviously, that last instruction is kind of

17  important because it has the verdict form in it.  But you may

18  use the verdict form.  You don't have to say, I anticipate

19  that the judge may be instructing you that.  You can just say,

20  This is the verdict form.  I will tell them I'm reading them

21  everything other than the final instruction, and you can say,

22  This is the verdict form.  You can put it up on the visual

23  presenter if you want and just use it.  All right?  And you

24  can say, This is the verdict form that the judge is going to

25  present to you.  Okay?

 1              **MR. HOGAN:**  Yes, Your Honor.

 2              **MS. ANDERSON:**  Yes, Your Honor.

 3              **THE COURT:**  And I think that that's about it.  We

 4     don't have asset forfeiture issues to deal with, do we?

 5              **MR. HOGAN:**  No, Your Honor.

 6              **THE COURT:**  All right.  All right.  So anybody have

 7     any other questions about how we're going to proceed before we

 8     turn to the various motions that have been filed by the

 9     Government?

10              **MR. HOGAN:**  No, Your Honor.

11              **MS. ANDERSON:**  No, Your Honor.  Thank you.

12              **THE COURT:**  All right.  Do you all want to take a

13     five- or ten-minute break and we'll come back?

14              **MR. HOGAN:**  I'm good, Your Honor.

15              **THE CLERK:**  Did you want to discuss how long they

16     want for closing?

17              **THE COURT:**  No.  We'll do that later after the

18     evidence comes in.

19              **THE CLERK:**  Okay.

20              **THE COURT:**  Okay.  Does anybody need a break or do

21     you want to go on?

22              **MR. HOGAN:**  I'm ready to go, Your Honor.

23              **MS. ANDERSON:**  The Government's ready, Your Honor.

24              **THE COURT:**  Carla, do you want a break or are you

25     okay?

1          **THE COURT REPORTER:**  I'm okay.

2          **THE COURT:**  All right.  Well, you let us know if and

3   when you need a break.  Okay?

4          Okay.  So I have a bunch of stuff here that's been

5   filed by the Government.  I don't know if some of it is

6   duplication or not but I thought we would just kind of run

7   through them, mostly in order, though I have grouped a few of

8   them, you know, a little -- that are similar.

9          But the first is the Government's motion to dismiss

10  Count 2 and to amend the indictment by interlineation to move

11  Count 3 to be Count 2.  Does the defendant have any objection?

12          **MR. HOGAN:**  No, Your Honor.

13          **THE COURT:**  Okay.  So No. 115 is granted.

14          And then there was a record of evidence that was

15  presented to the defendant for viewing.  That was

16  Document No. 111.  These were either material -- discovery

17  previously provided or that was made available for viewing.

18  Does the defendant have any objection to any of the statements

19  made there that, namely, this information was provided to the

20  defendant?

21          **MR. HOGAN:**  No, Your Honor.  I've received it all.

22          **THE COURT:**  All right.  And then we had the

23  stipulations in 117 that I think we've already discussed.

24  Yes?

25          **MR. HOGAN:**  Yes, Your Honor.

 1              **THE COURT:**  All right.  And I'm assuming that both

 2   parties are in agreement with respect to the stipulations that

 3   appear in 117, the three?

 4              **MR. HOGAN:**  That's agreed, Your Honor.

 5              **THE COURT:**  All right.  And then we've got the

 6   Document No. 73, and this was filed back in April.  That was

 7   the Government's notice of intent to use at trial certified

 8   records.  And that had -- that had, for instance, the search

 9   warrant, the Charter records as business records.  So any

10   objection to the use of the certified records that are in

11   No. 73?

12              **MR. HOGAN:**  No objection, Your Honor.

13              **THE COURT:**  Okay.  And then we've got the more

14   recent one and I think it's a little bit different.  105.  And

15   this is an intent to use certified records.  It's got still

16   the indictment, but then it has some Samsung electronic

17   records.

18              **MR. HOGAN:**  Yes, Your Honor.  No objection.

19              **THE COURT:**  All right.  And then we had the -- the

20   Government made certain disclosures with respect to

21   anticipated expert testimony that was filed a couple of weeks

22   ago.  I did not see any objection from the defendant.  Any

23   objection --

24              **MR. HOGAN:**  No, Your Honor.

25              **THE COURT:**  -- to the proposed expert testimony?

1          **MR. HOGAN:**  No, Your Honor.  There was one witness

2     which I objected to and I believe the Government and I agreed

3     they're not going to use them as an expert, so we are now in

4     agreement with everything.

5          **THE COURT:**  All right.  And which of those witnesses

6     was that?

7          **MR. HOGAN:**  It would have been Trooper Weadon,

8     Your Honor.

9          **THE COURT:**  Okay.  So Jeremy Weadon is not going to

10    be called as an expert; is that correct?

11         **MS. ANDERSON:**  That is correct.  I anticipate he

12    will be called, but we will not be using him for any expert

13    testimony purposes or asking that he be recognized as an

14    expert.

15         **THE COURT:**  Okay.  So he will be a fact witness

16    only?

17         **MS. ANDERSON:**  Exactly, Your Honor.

18         **THE COURT:**  Okay.  Thank you.

19         And then I have the Government's motions *in limine*.

20    Now we had one that was filed back on March 30, 2022.  And I

21    think that that has -- it's pretty much the same as 113?

22         **MS. ANDERSON:**  That's correct, Your Honor.  The most

23    recent, I think, encompasses all of the points that were made

24    in the earlier filings.  And of those, I believe the parties

25    are in agreement as to two of the three items that the

1    Government has --

2             **THE COURT:**  But first, I just need to know if 69 can

3    be denied as moot because it has been supplanted by other --

4             **MS. ANDERSON:**  Yes, Your Honor.

5             **THE COURT:**  Okay.  So 69 is denied as moot.

6             And then I had 113 which seemed to cover, you know,

7    the same items.

8             **MS. ANDERSON:**  That's correct.  And that can also be

9    denied as moot, Your Honor.

10            **THE COURT:**  Okay.  All right.  And then the next one

11   that I had is that 74 had previously been filed, but I think

12   that that was denied as moot in my order of April 7, 2022.  So

13   I'm assuming that you all don't think that 74 is still live

14   because I think the Court previously denied that when the

15   trial was continued.  Is that --

16            **MS. ANDERSON:**  I believe that is correct,

17   Your Honor.  Yes.  What's contained in 74 is similar to what's

18   contained in filing Document No. 113.

19            **THE COURT:**  But you just denied 113 -- told me I

20   could deny 113 as moot.

21            **MS. ANDERSON:**  Yes.  And my apologies, Your Honor.

22   I did not have these in the correct order.  So 113 is, of

23   course, the most recent filing and there is still one point of

24   contention between the parties in 113, so my apologies on

25   that.

1          **THE COURT:**  Okay.  So we are not denying 113 as

2   moot?

3          **MS. ANDERSON:**  Correct, Your Honor.

4          **THE COURT:**  Okay.  So let's go back.  But I am going

5   to -- hold on.  But 74 can be denied as moot?

6          **MS. ANDERSON:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  Because I think that I denied

8   that already.  All right.  So No. 74, the Court previously

9   denied when the trial was continued.

10          All right.  And then we get to -- sorry.  Then we

11   get to 113.  And that is -- that has two grounds.  One, the

12   alternate perpetrator as well as the Government introducing

13   business records without calling a custodian.  I assume that

14   with respect to the business records, we've already addressed

15   that; is that fair?

16          **MR. HOGAN:**  Yes, Your Honor.  Isn't there the other

17   point about -- remember, we talked about not to mention

18   punishment?  Isn't there four points in your motion?

19          **MS. ANDERSON:**  The issue of not to mention

20   sentencing was in a previous one and I know we discussed that,

21   so I think it was moot because it wasn't really going to be

22   contested.

23          **MR. HOGAN:**  Yes.  One of the previous issues,

24   Your Honor, was that for defense counsel not to mention

25   punishment which I don't do that.  It's not the -- that's for

 1    the Court, not for the counsel.  So we've agreed on that.  So

 2    the only issues we were left with was the Samsung -- was --

 3    well, other than perpetrator.  What's the other issue?

 4          **MS. ANDERSON:**  I think that was the only one that

 5    remains that the Court may need to hear argument of the

 6    parties on.  Everything else is moot just by either agreement

 7    of the parties or because it was redundant.

 8          **THE COURT:**  Okay.  I guess I need to know if there

 9    are certain things that were raised in your motions that we

10    haven't talked about that I don't need to rule on because you

11    all have agreed on it.  I just need to know what those things

12    are.

13          **MS. ANDERSON:**  And I can list those for the Court at

14    this time.

15          **THE COURT:**  Hold on just a minute.

16          Okay.  If I'm hearing you all correctly, you all

17    didn't really take note of the fact that I had denied 74

18    previously in the court records and it sounds like you all

19    were treating 74 as though it was still out there.  And I

20    don't have any problem with that.  And I can resurrect 74

21    because that had -- and I'm only saying that because it seems

22    to cover what you all are talking about.  And it's got

23    questions with respect to the defendant's first interview.

24    It's got motion to exclude references to punishment and

25    collateral consequences.  And then it's got a motion to

 1   exclude with respect to alternate perpetrator.

 2            So I'm going to treat 74 as though it had not

 3   previously been denied because it seems like it is raising

 4   issues that you all considered were still on the table.

 5        **MR. HOGAN:**  Well, yes, Your Honor.  And, Your Honor,

 6   for the record, I was not counsel at the time, I believe, when

 7   that was done.

 8        **THE COURT:**  Right.  Right, right, right, right.

 9        **MR. HOGAN:**  And so -- but, no.  We have -- if the

10   Court -- it's probably easier to do it the way you suggest,

11   Your Honor.

12        **THE COURT:**  Yeah.  Let's just look at the items that

13   are listed on 74 and decide what we have questions about and

14   what we do not.

15        **MR. HOGAN:**  We only have questions on one thing,

16   Your Honor, the alternate perpetrator.

17        **THE COURT:**  Okay.  Because the first matter is that

18   the defendant cannot offer his own statements made to law

19   enforcement.

20        **MR. HOGAN:**  Yes, Your Honor.

21        **THE COURT:**  Okay.  And so this first ground, is

22   there agreement with respect to the paragraph 1 in 74?

23        **MR. HOGAN:**  Yes, Your Honor.  With the stipulation

24   that if my client chooses not to testify, we cannot mention

25   statements to law enforcement.  If my client chooses to

 1    testify, at that point, he would be free to discuss statements

 2    he made to law enforcement on the stand.

 3              **THE COURT:**  Well, me may or may not.  That would be

 4    subject, potentially, to a hearsay objection by the Government

 5    and we would address it at that time.

 6              **MR. HOGAN:**  Yes, Your Honor.

 7              **THE COURT:**  All right.  So, certainly, absent

 8    testimony, and we would address whether he is free to make

 9    those statements if he does testify, does the Government have

10    any objection to the defendant stating statements that he made

11    to law enforcement if, in fact, he testifies?

12              **MS. ANDERSON:**  During his initial direct

13    examination, I expect, yes, that I probably would find that

14    those would be just self-serving hearsay statements.  Now, of

15    course, if he is cross-examined about certain statements he

16    made, because I do believe that opens the door not only for

17    there to be further redirect about those statements that were

18    listed in cross-examination, but, potentially, also to bring

19    in a few other statements that might be related.

20              **THE COURT:**  All right.  So, right now, with respect

21    to that, then that will not happen -- it will not be elicited

22    by the defendant unless he chooses to testify.  But if he does

23    choose to testify, then you need to discuss that with the

24    Court first because the Government may have an objection to

25    that because, even though it is the defendant's own statement,

1    it may still be hearsay.

2              **MR. HOGAN:**  Yes, Your Honor.

3              **THE COURT:**  And so then we will address that on an

4    evidentiary basis as we go.  All right?

5              **MR. HOGAN:**  Yes, Your Honor.

6              **THE COURT:**  And then the second was to exclude

7    references to any punishment or collateral consequences.

8              **MR. HOGAN:**  That's -- yeah.  Your Honor, no

9    objection to that.  I --

10             **THE COURT:**  Okay.

11             **MR. HOGAN:**  I don't do that, so...

12             **THE COURT:**  All right.  And then the third is the

13   alternate perpetrator and that issue is raised in multiple

14   filings by the Government.  And so we've got the motion to

15   exclude references to or evidence and argument of alternate

16   perpetrators absent non-speculative evidence.  And so have the

17   parties reached any agreement with respect to that item?

18             **MR. HOGAN:**  No, Your Honor.

19             **THE COURT:**  Okay.  So I have reviewed the case law

20   that the Government cited in its memo in 74.  And as I said,

21   it was also raised in a couple of other motions by the

22   Government and one or two cases were cited there as well.  And

23   does the Government -- I mean, mostly what I need to do is

24   hear from the defendant what -- a proffer of what it is that

25   we are talking about.  But does the Government wish to offer

1   any argument on the law prior to hearing from the defendant

2   what it is that the defendant would propose to offer?

3          **MS. ANDERSON:**  Your Honor, at this time, the

4   Government would stand on the legal arguments and the factual

5   arguments that are contained in the motion *in limine* and then

6   would, perhaps, ask for the ability to respond to defense

7   counsel's presentation.

8          **THE COURT:**  All right.  And so, Mr. Hogan, I guess

9   what I need to hear from the defendant is what it is that we

10  are talking about.  I need to hear a proffer from the

11  defendant because, while he may be entitled to offer evidence

12  of an alternate perpetrator because, obviously, that can be

13  relevant, there are limits to what can be offered in that.

14  And so, while we are dealing with Rule 401 of the Federal

15  Rules of Evidence, we are also dealing with Rule 403.  And

16  that evidence can, and often should, be excluded if it is

17  speculative or remote.

18          So I will hear from you.  What is it that the

19  defendant plans to offer in this regard?

20          **MR. HOGAN:**  Your Honor, what we intend to offer, and

21  I have, for the Court's -- well, I'm sure -- they were filed

22  ex parte, but the Court is aware.  I have requested subpoenas

23  on four different individuals.

24          Those individuals, what they would testify to,

25  Your Honor, or what we believe they would -- what would be

 1    elicited on cross-examination is how I should phrase it.  What

 2    we believe will be elicited on cross-examination -- through a

 3    vigorous cross-examination --

 4              **THE COURT:**  So we believe these are witnesses that

 5    the Government is going to propose?

 6              **MR. HOGAN:**  No, Your Honor.

 7              **THE COURT:**  Okay.

 8              **MR. HOGAN:**  These are witnesses that Mr. Price wants

 9    me to call.

10              **THE COURT:**  Okay.  All right.

11              **MR. HOGAN:**  And --

12              **THE COURT:**  So this would be elicited on direct

13    examination?

14              **MR. HOGAN:**  Yes, Your Honor.

15              **THE COURT:**  Okay.  All right.

16              **MR. HOGAN:**  I'm so used to saying cross.  Forgive

17    me.

18              **THE COURT:**  Gotcha.

19              **MR. HOGAN:**  On direct examination, we believe

20    information would be elicited which would be helpful to the

21    defendant.  Specifically, Your Honor, simply stated, my client

22    believes that the people he was in business with -- he's no

23    longer involved in that business.  They have taken the

24    business from him.  That these people have supplanted

25    information on his telephone and framed him for acts, criminal

1   charges; namely, all relating to child pornography, in an

2   effort to steal his business.  And the business, he is no

3   longer with.  They have succeeded.  And he is charged here in

4   court.  That's the witnesses that I have subpoenaed.  And

5   without getting into great specific detail, that is because of

6   client confidentiality, that is, Your Honor, the basis of why

7   I wanted to be able to call these witnesses and I want to

8   inquire as to alternate perpetrator.

9         **THE COURT:**  And when was it that the defendant was

10   in business with these individuals?

11         **MR. HOGAN:**  He's been in business with them from --

12   what was the year you began?

13         **THE DEFENDANT:**  I purchased the facility and started

14   the corporation in 2017.  Prior to -- years prior to that, I

15   wouldn't have been.

16         **MR. HOGAN:**  So 2015?

17         **THE DEFENDANT:**  2017.

18         **MR. HOGAN:**  2017, Your Honor, up until the point

19   that he was actually indicted and arrested.

20         **THE COURT:**  And what is this business?

21         **MR. HOGAN:**  It was called Peaches, Your Honor, and

22   it was an assisted living facility for folks with

23   disabilities.

24         **THE COURT:**  All right.  And when and how was this

25   planting of the child pornography supposed to have taken

1  place?

2          **MR. HOGAN:**  Some time prior to his indictment,

3  Your Honor.

4          **THE COURT:**  Well, when?

5          **MR. HOGAN:**  Your Honor, I don't have that

6  information, Your Honor.

7          **THE COURT:**  How?

8          **MR. HOGAN:**  I don't have that information either,

9  Your Honor.

10          **THE COURT:**  So do we have anything here other than

11  the fact that the defendant was in business with these

12  individuals, had a, I assume, pretty significant dispute with

13  them, and that he believes they would have motive to set him

14  up?

15          **MR. HOGAN:**  That is exactly correct, Your Honor.

16          **THE COURT:**  Is there anything beyond that?

17          **MR. HOGAN:**  No, Your Honor.

18          **THE COURT:**  All right.  Anything further that you

19  wish to offer by way of proffer?

20          **MR. HOGAN:**  No, Your Honor.

21          **THE COURT:**  All right.  And these are individuals

22  who you have, in fact, obtained subpoenas for?

23          **MR. HOGAN:**  Yes, Your Honor.

24          **THE COURT:**  All right.  And so you would at least be

25  able to address these matters with those witnesses as opposed

1  to trying to offer it through hearsay?

2          **MR. HOGAN:**  Yes, Your Honor.

3          **THE COURT:**  All right.  Thank you.

4          Ms. Anderson?

5          **MS. ANDERSON:**  Thank you, Your Honor.  Your Honor,

6  it's the Government's position that this theory of an

7  alternate perpetrator or, perhaps, multiple alternate

8  perpetrators is legally insufficient, Your Honor, and is not

9  founded or grounded in any admissible evidence, Your Honor.

10          It's a theory, but it is completely untethered to

11  any evidence that this Court could allow to come in before a

12  jury.  What we, essentially, have is that there is bad blood

13  between the defendant and, perhaps, as many as three or four

14  other individuals in the community to do entirely with a

15  business.  No evidence that it went further than that.

16  Certainly no evidence that it crossed into the realm of sexual

17  exploitation of children or child pornography.

18          The evidence in this case against Mr. Price involves

19  dozens of individual dates, and even within those dates,

20  multiple times in which the Government can prove that his

21  cell phone was accessing child pornography, downloading child

22  pornography, inputting search terms for child pornography,

23  visiting websites for child pornography, and other activities

24  involving child pornography.  So the idea that there could be

25  any alternate perpetrator who on dozens of occasions would

1   have had access to the defendant's cell phone in order to do

2   these things is completely specious and unfounded by any

3   evidence.

4            The individuals -- the Government is familiar with

5   the individuals with whom the defendant had bad business

6   dealings and it's the Government's expectation that they would

7   adamantly deny these accusations.  And, in fact, would

8   actually probably be very bad witnesses for the defendant in

9   this case if they were presented based on the information they

10  have and certainly would not have any information that would

11  further this idea that they, in fact, planted child

12  pornography or set him up or in any way framed him.  There

13  simply is not one shred of admissible evidence on this theory

14  and the Government believes that for that reason, it should be

15  denied, Your Honor.

16           **THE COURT:**  All right.  Anything further?

17           **MR. HOGAN:**  No, Your Honor.

18           **THE COURT:**  All right.  I have looked at the case

19  law on this matter and I am going to grant the Government's

20  motion to exclude any testimony of any alternate perpetrator.

21  The case law tells me, and just to look at the Eighth Circuit

22  cases of *United States v. Thibeaux*, T-H-I-B-E-A-U-X,

23  748 F.3d 1221, and that is a case from the Eighth Circuit from

24  2015, as well as United *States v. Flaherty*, F-L-A-H-E-R-T-Y,

25  and that is 76 F.3d 967, an Eighth Circuit case from 1996.

1          Those cases tell the Court that it needs to employ a

2    balancing test under Rules 401 and 403.  And that, while it

3    may have some relevance, it can only be permitted if the

4    circumstances of the other crime are sufficient -- excuse

5    me -- it can only be permitted if it is shown to have some

6    level of certainty.  It cannot be -- it can be denied under

7    Rule 403 where the evidence is speculative or remote.

8          And that is what we are dealing with here.  And,

9    here, I think the probative value of the proffered evidence is

10   very slight.  We have nothing here tying these individuals to

11   this crime of child pornography other than the fact that the

12   defendant believes that these individuals had motive and the

13   fact that he has been indicted for child pornography has

14   apparently made it easier for them to achieve the end of

15   taking his business.

16          But this is a very, very weak connection and I

17   just -- there just is not enough to tie what is being offered

18   here to any credible suggestion of an alternate perpetrator

19   and it would serve to confuse and distract the jury.

20          We need to have a connection between that

21   perpetrator and the crime and not simply speculation by the

22   defendant.  And I cite the case of *United States v. Lighty* for

23   that proposition, 616 F.3d 321, and also sight the parties to

24   *United States v. Moore*, M-O-O-R-E, and that is a 2022 case

25   from March of -- March 10, 2022.  It is a court from the

1    District of Columbia.  And the case cite is 2022 WL 715238,

2    and it has a very thorough discussion of the standards for

3    admission.

4             And, here, there simply is not a sufficient showing

5    and I find that the prejudicial impact of allowing the

6    defendant to offer speculation that somebody might have framed

7    him or set him up, that the prejudicial value of that far

8    outweighs its probative value and I find that probative value

9    to be slight.

10            So the defendant will not be permitted -- Mr. Price,

11   you will not be permitted to offer this theory of an alternate

12   perpetrator.  It won't come in through your testimony.  It

13   won't come in through any other witnesses' testimony.  And I

14   am ordering that it will be excluded.  All right?  Do you

15   understand that, sir?

16            **THE DEFENDANT:**  Yes, ma'am.

17            **THE COURT:**  All right.  So this case will be tried

18   without any evidence of your belief that your prior business

19   partners have framed you and set you up by planting this child

20   pornography either on your cell phone or on your computer.

21   You understand?

22            **THE DEFENDANT:**  Yes, ma'am.

23            **THE COURT:**  All right.  Anything further with

24   respect to the matters that are listed in Docket No. 74?

25            **MR. HOGAN:**  No, Your Honor.

1          **MS. ANDERSON:**  No, Your Honor.

2          **THE COURT:**  All right.  And then we have multiple

3     notices under Rule 414 as well as 404(b).  I thought that

4     there was a lot of overlap between what was raised in the

5     404(b) motions as well as the 414.  If I'm understanding

6     each -- well, first of all, I can't really -- couldn't really

7     tell if you -- if what is raised in 72 was supplanted by 107

8     or if we were talking about some items in Docket No. 72, some

9     more in Docket No. 106, and then some more in 107.

10         So why don't you -- why doesn't the Government tell

11    me what it is that is at issue with respect to the 414(b)

12    evidence and then you can tell me how that equates to your

13    404(b).

14         **MS. ANDERSON:**  Yes, Your Honor.  The evidence that

15    the Government has described in actually all of those motions

16    under Rule 414 as well as, Your Honor, actually, the 404(b)

17    evidence, the Government contends is evidence that is

18    intrinsic to the case and I believe that that is not a point

19    that will be objected to by the defense.  So in light of it

20    being considered intrinsic evidence, we may be able to simply

21    deny the 414 and 404(b) motions as moot at this time based on

22    the agreement of the parties.

23         **THE COURT:**  All right.  But if I understand

24    correctly, and I just want to make sure I'm understanding,

25    what you are talking about offering in these 414 -- Rule 414

1   motions is you are planning to offer the fact that other child

2   pornography, in addition to what was charged in the

3   indictment, was found on the defendant's system or that there

4   was other evidence of seeking child pornography through

5   searches.  Is that a fair summary of what we're talking about

6   here in the 414 motions?

7           **MS. ANDERSON:**  That is correct, Your Honor.  Yes.

8   Yeah.

9           **THE COURT:**  All right.

10           **MS. ANDERSON:**  The other child pornography that was

11   located as well as cookies evidencing activity on child

12   pornography through the phone, search terms that were used to

13   find child pornography, child pornography websites that were

14   visited and even bookmarked.  That type of evidence which the

15   Government contends -- and, of course, the images that were

16   sent to the Highway Patrol.  And the Government's contention

17   is that all of that is intrinsic to the defendant's receipt of

18   child pornography and accessing with the intent to view child

19   pornography.  All of these items do fall within the date range

20   charged by the Government, and, of course, the Government's

21   indictment does indicate child pornography including but not

22   limited to.  So it truly is intrinsic evidence, Your Honor.

23           **THE COURT:**  All right.  And I wasn't sure from my

24   review of these motions.  Are we talking about media that --

25   images and searches and cookies and all of that, on the cell

 1   phone, as well as items that were found on a computer?

 2           **MS. ANDERSON:**  It would be limited to items that

 3   were found on the cell phone.  The only other items would be

 4   the videos that were distributed on March 9, 2019, to the

 5   Highway Patrol, that then led to the search warrant and kind

 6   of got the investigation started.  So it's just those two

 7   things.  But the bulk of it is located on that cell phone.

 8   The rest of it --

 9           **THE COURT:**  But the videos were transmitted from a

10   computer?

11           **MS. ANDERSON:**  They were transmitted from an

12   electronic device, Your Honor.

13           **THE COURT:**  Other than the cell phone?

14           **MS. ANDERSON:**  It may well be on the cell phone.  In

15   fact, there's evidence that corroborates that those videos

16   were, in fact, on the cell phone.  There is also peer-to-peer

17   file sharing programs on the cell phone.  So that certainly

18   would make sense.

19           **THE COURT:**  Okay.  So is there -- are there images

20   or other things that you are seeking to introduce that are

21   coming from a computer other than the cell phone?

22           **MS. ANDERSON:**  No, Your Honor.

23           **THE COURT:**  All right.  And we're talking about a

24   period in time within a year of when the search warrant took

25   place; is that correct?

1          MS. ANDERSON:  The date range would be from -- from

2   January 1, 2018, till April 9, 2019, is the charged date

3   range.  The actual child pornography evidence against the

4   defendant that was located on his cell phone would certainly

5   be, I can't recall the date off the top of my head, but as

6   early as February of 2018 through and till April of 2019,

7   there is substantial evidence of child pornography activity on

8   the phone.

9          THE COURT:  Okay.  But to the extent you are talking

10  about uncharged items, we're talking about things within that

11  general date range?

12         MS. ANDERSON:  That is correct, Your Honor.

13         THE COURT:  We're not talking about something that

14  was on a cell phone from two years ago or three years ago?

15         MS. ANDERSON:  Right.  Nothing that's not within the

16  charged date range.

17         THE COURT:  All right.  Okay.  And with that -- with

18  that clarification, Mr. Hogan, does the defendant have any

19  objections to that evidence coming in as intrinsic evidence?

20         MR. HOGAN:  No, Your Honor.  Your Honor, this is --

21  I'm not used to -- I share the Government's opinion.  I do

22  believe this is intrinsic.  I don't think it's 404 or 414.  I

23  guess you could make it.  I think it's duplicitous.  This is

24  evidence in their case-in-chief.  So to say it's evidence in

25  your case -- I know they could at least attempt to bring it

1   in, in their case-in-chief, so saying it's 414 or 404, I don't

2   think it's irrelevant.  I think it's duplicitous and I think

3   it's moot.  They have every right to pursue their charges and

4   prove the evidence, which there is in these motions,

5   Your Honor.  It's the basis of the indictment.

6           **THE COURT:**  All right.  But are you objecting to the

7   evidence?  That's what I need to know.

8           **MR. HOGAN:**  No.

9           **THE COURT:**  Okay.  I understand that you think it's,

10   perhaps, unnecessary.

11           **MR. HOGAN:**  Yes.

12           **THE COURT:**  But you are not objecting to it?

13           **MR. HOGAN:**  Yes.

14           **THE COURT:**  And, obviously, if there comes a time

15   when you think that it is, you know, cumulative or getting to

16   a point where it is prejudicial to the defendant, I don't know

17   how much of this is going to be offered or in what manner,

18   but, obviously, the mere fact that you are not objecting, in

19   general --

20           **MR. HOGAN:**  Yes.

21           **THE COURT:**  -- if it reaches a point where you feel

22   that it is cumulative or reaching a point where it is just

23   prejudicial, overly prejudicial to the defendant to continue

24   to put that into the record, you will be free to raise an

25   objection at trial at that time.  Not based on the fact that

1  there's no evidentiary foundation for it, but rather, on 403

2  grounds.  Does that make sense?

3          **MR. HOGAN:**  Yeah, it does, Your Honor.

4          **THE COURT:**  All right.  And then was there anything

5  else that the Government was seeking to use under Rule 404(b)?

6          **MS. ANDERSON:**  No, Your Honor.  There was nothing

7  further.

8          **THE COURT:**  Okay.  And so I think that takes care of

9  all of the motions.  Did I miss any?

10          **MS. ANDERSON:**  No, Your Honor.  I believe that is

11  everything.

12          **THE COURT:**  All right.  So that takes care of all of

13  the motions here.

14          And I think the last thing that we need to do, and I

15  don't know.  Do you all want to take a little break before we

16  do?  We do need to come back and have a *Frye* hearing.  And so

17  do you want to take a little break before we do that or do you

18  want to do that now?

19          **MR. HOGAN:**  We can do it now, Your Honor.  I'm

20  ready.

21          **THE COURT:**  All right.  So -- are you still okay,

22  Carla?

23          **THE COURT REPORTER:**  Yes.

24          **THE COURT:**  Kelley?

25          **THE CLERK:**  I'm fine.  Thank you.

1          **THE COURT:**  All right.  So let me just ask you,

2    Mr. Price.  Do you have any questions about the rulings that

3    have been made here or the process that we're going to be

4    going through?

5          **THE DEFENDANT:**  No, ma'am.

6          **THE COURT:**  All right.  Because I'm happy to clarify

7    it for you if you have any questions.

8          **THE DEFENDANT:**  Sure.

9          **THE COURT:**  But, obviously, you know, my job here is

10   to make rulings on this and make sure everybody understands

11   how we're going to proceed.  But it's also important to me

12   that you understand --

13         **THE DEFENDANT:**  Sure.  Yes, Your Honor.

14         **THE COURT:**  -- those things.

15         And so you should understand from the rulings that I

16   have just made that the Government will be allowed to offer

17   items of child pornography, search terms, cookies and things

18   like that off of your electronic media beyond the particular

19   items of child pornography that are listed in the indictment,

20   that with respect to the items listed in the indictment, the

21   parties have reached certain stipulations so that some of the

22   elements of those charges are met by stipulation; namely, that

23   they are child pornography, that they were transported in

24   interstate commerce, and that at least with respect to some of

25   them, that they did involve images of real children.

1          And so some of the elements of the charges, the

2    Government will not have to prove because they are being done

3    by stipulation.  You understand that?

4          **THE DEFENDANT:**  Yes, ma'am.

5          **THE COURT:**  All right.  And then, in addition, to

6    the extent that you wish to offer arguments that your prior

7    business partners framed you and planted this evidence, this

8    child pornography on your phone, I will not permit that

9    argument to be made directly or indirectly.  Either directly

10   through the witnesses or by your own testimony.  You

11   understand that, sir?

12         **THE DEFENDANT:**  Yes, Your Honor.

13         **THE COURT:**  And, obviously, whether you choose to

14   testify or don't choose to testify is solely a question for

15   you to be made in consultation with your attorney as we go

16   along.  But you understand it's not just that I am excluding

17   it with respect to those witnesses.  Should you choose to take

18   the stand, I also will not permit you to advise the jury that

19   this evidence was planted on you by your prior business

20   partners.  Do you understand that?

21         **THE DEFENDANT:**  Yes.  Yes, Your Honor.

22         **THE COURT:**  All right.  So I think that that takes

23   care of all of those rulings.  And so, I know that, Mr. Price,

24   you've been through several attorneys in this case.  And

25   Mr. Hogan's been working with you for some time now.  And

1    we've tried to give you all the time that you need to prepare.

2    And have you, in fact, been able to meet with Mr. Hogan to

3    prepare your defense in this matter?

4            **THE DEFENDANT:**  Yes, Your Honor.

5            **THE COURT:**  All right.  And are you satisfied with

6    the representation that you are receiving?

7            **THE DEFENDANT:**  Yes.

8            **THE COURT:**  Is there anything you wanted Mr. Hogan

9    to do that he hasn't done?

10           **THE DEFENDANT:**  No.  He's -- he's been wonderful.

11           **THE COURT:**  All right.  Anything you asked him to do

12   that he failed or refused to do?

13           **THE DEFENDANT:**  No.

14           **THE COURT:**  And to the extent you've had questions,

15   has he answered those questions for you?

16           **THE DEFENDANT:**  Yes, Your Honor.

17           **THE COURT:**  All right.  And with respect to what's

18   happened here today, do you have any questions at all for me?

19           **THE DEFENDANT:**  No.

20           **THE COURT:**  All right.  So the last thing that I

21   think that we need to do here is make a record with respect to

22   any plea offers.

23           And can you tell me, is there any plea offer that is

24   currently on the table?

25           **MS. ANDERSON:**  Your Honor, there is not any offer

1  from the Government that is on the table.  As the Court may

2  recall, there was a previous *Frye* hearing conducted in court

3  when the defendant was represented by Attorney Morrison and

4  the Government did have a plea offer on the table at that

5  time, but it expired.

6         The Government has not made any further plea offer.

7  However, the Government has and continues to remain open to

8  any reasonable counter-offer by the defendant in this case.

9  Of course, it's the Government's expectation that if there is

10 a conviction, that the guidelines would suggest a sentence of

11 between 17.5 and 21.8 years of incarceration.  The Government

12 would certainly be responsive to a counter-offer for a period

13 of incarceration of substantially less than that, Your Honor,

14 but the Government doesn't have any open offers and, in fact,

15 has not made any offers since that last *Frye* hearing.

16        **THE COURT:**  All right.  And can you just remind me

17 what the prior offer was?

18        **MS. ANDERSON:**  That offer, Your Honor, which was

19 predicated on prompt acceptance of responsibility in large

20 part was 3 years imprisonment to be followed by lifetime

21 supervised release, Your Honor, and appropriate assessments

22 and restitution.

23        **THE COURT:**  All right.  And I believe that you were

24 here in court, Mr. Price, when that offer -- when we made a

25 record of that offer previously.  And did you, in fact, either

1    directly or through your attorney reject that offer?

2              **THE DEFENDANT:**  Yes, Your Honor.

3              **THE COURT:**  All right.  Did you have any questions

4    about what that offer entailed?

5              **THE DEFENDANT:**  No, ma'am.

6              **THE COURT:**  Okay.

7              **MR. HOGAN:**  And, Your Honor, for the record, I did

8    inquire.  I went down to view the evidence last week so I had

9    a meeting with counsel and the investigator and I had asked if

10   that previous offer would still be open and they told me it

11   would not, but that I was free to inquire as to -- to make

12   another offer, Your Honor.  But we haven't done that yet

13   because my client hasn't yet authorized me to do that.

14             **THE COURT:**  And please remind me.  Does a mandatory

15   minimum sentence apply in this matter?

16             **MS. ANDERSON:**  It does as to Count 1, Your Honor.

17   The mandatory minimum would be 5 years imprisonment.  And as

18   to what will now be Count 2, there's not a mandatory minimum,

19   Your Honor.

20             **THE COURT:**  All right.  So, Mr. Price, have you

21   heard everything that's been said here, sir?

22             **THE DEFENDANT:**  Yes, Your Honor.

23             **THE COURT:**  All right.  And you understand that

24   Count 1, if convicted in this matter, would carry a mandatory

25   minimum sentence of at least 5 years?

1           **THE DEFENDANT:**  Yes, Your Honor.

2           **THE COURT:**  All right.  And so you understand that

3    absent certain very narrow circumstances that nobody has

4    presented to me, I would have no choice but to sentence you to

5    at least 5 years if convicted on Count 1?

6           **THE DEFENDANT:**  Yes, Your Honor.

7           **THE COURT:**  All right.  And have you had an

8    opportunity to discuss with your attorney what the sentencing

9    guideline range might be if convicted on Counts 1 and now

10   Count 2?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  All right.  Any question about that?

13          **THE DEFENDANT:**  No.

14          **THE COURT:**  All right.  And so I just want to make

15   sure that you understand, sir, that, at this point in time,

16   you've got three basic options.  And I'm sure I discussed

17   these with you at your last *Frye* hearing as well.  There is no

18   offer right now from the Government and your attorney has

19   determined that the offer that was previously made is no

20   longer on the table.  So with respect to that option, to

21   accept the offer previously made by the Government, you

22   understand that is no longer available to you?

23          **THE DEFENDANT:**  Yes, Your Honor.

24          **THE COURT:**  All right.  But you do have the option

25   to make a counter-offer to the Government.  So if, in fact --

1   and you can even make a counter-offer to the Government with

2   respect to what was offered to you before.  You can make any

3   form of counter-offer to the Government.  I think they've made

4   it pretty clear that if that counter-offer was less than

5   36 months, they're not going to accept it.  And you are free

6   to make any counter-offer that you wish.  But they are not

7   required to agree to that.  Do you understand that?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  But if you do, in fact, wish to resolve

10  this case without a jury trial and resolve it through some

11  form of plea agreement, then you can make a counter-offer to

12  the Government and let the Government know according to what

13  terms you would be willing to enter into a guilty plea.

14          And, typically, if you all can agree to that, it

15  would be pursuant to some form of plea agreement that may have

16  other terms in it.  All right?  And what those terms would be,

17  would be things for you all to decide.  But, typically, the

18  written plea agreement covers a whole lot of aspects including

19  guidelines calculations and other things of that sort.  And

20  sometimes it could have, you know, an agreement with respect

21  to a penalty range that the parties are going to recommend to

22  the Court.

23          Your other option is to do a blind plea, an open

24  plea.  And in an open plea, you are free at any time to come

25  into court and say that you are going to plead guilty to what

1   is now Counts 1 and 2 of the indictment.  Because you know

2   what previously was Count 2 has been dismissed and Count 3

3   will become Count 2.  So you are free at any time to decide

4   that you want to do an open plea to Counts 1 and 2 which

5   wouldn't have any other agreements with the Government with

6   respect to any sentencing recommendations or other terms.  But

7   as I have already advised you, sir, that absent certain very

8   narrow circumstances, you would be subject to a mandatory

9   minimum sentence of 60 months with respect to Count 1.

10          And other than that, issues with respect to

11  guidelines calculations and sentencing and appellate waivers,

12  all of those things, would be open matters to be determined in

13  connection with your sentencing.  Do you understand that?

14          **THE DEFENDANT:**  Yes, Your Honor.

15          **THE COURT:**  So any questions about any of that?

16          **THE DEFENDANT:**  No.

17          **THE COURT:**  All right.  So you understand that at

18  this moment in time, you are free to make a counter-offer to

19  the Government and let them know if, in fact, you would like

20  to resolve these charges short of trial, without a trial, that

21  that is something you can discuss with Mr. Hogan and you can

22  make an offer to the Government.  And, obviously, we have a

23  couple of days between now and Monday when we could get that

24  plea done if that's what you want to do.

25          And then if you decide you want to do an open plea,

1   you can do that as well.  I wouldn't recommend that to you

2   because I suspect you would be able to negotiate a better

3   agreement with the Government than you might receive on an

4   open plea, but that's your choice and you are free to do that

5   if that is what you wish to do.

6           And then, of course, your third choice is to go to

7   trial.

8           **THE DEFENDANT:**  Uh-huh.

9           **THE COURT:**  Do you understand that?

10          **THE DEFENDANT:**  Yes, Your Honor.

11          **THE COURT:**  All right.  And we're all ready to go.

12  As you can see, we've resolved all the issues we need to

13  resolve.  The parties need to give me a few things still.  But

14  other than that, we're ready to go to trial.  You understand?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  All right.  Any questions for me, sir?

17  Do you have any questions for me?

18          **THE DEFENDANT:**  No.  No, Your Honor.

19          **THE COURT:**  All right.  So I am going to leave it to

20  you and Mr. Hogan to discuss your options and make sure that

21  you're doing what it is you want to do at this point in time

22  now that you have been able to get a better picture of what

23  evidence is and is not going to come in during your trial.

24  Okay?

25          **THE DEFENDANT:**  Okay.

1          **THE COURT:**  All right?

2          **THE DEFENDANT:**  Yes.

3          **THE COURT:**  Anything further from either party?

4          **MR. HOGAN:**  No, Your Honor.

5          **THE COURT:**  All right.  So we need to address if

6    we're going to trial.  We need to address clothing for trial.

7    All right?  I need to receive from the defendant a list of any

8    additional names that I am likely to hear.  I need --

9          **MR. HOGAN:**  I'm sorry.  Would you repeat that

10   second --

11         **THE COURT:**  The names that the jury might hear

12   during the course of the trial.  So look at the Government's

13   list and see if there are any additional names of entities or

14   people that you think the jury's going to hear during the

15   course of the trial.  And then I need an exhibit list from the

16   Government to be provided to the defendant.  I need to have

17   objections by the defendant by Friday.  And then you all need

18   to let me know Monday morning if -- which exhibits, if any,

19   you are stipulating to in terms of foundation.  And then any

20   additional instructions from the defendant by Monday morning.

21   And I also need those instructions to be provided to us in

22   Word, an electronic format either by e-mail to Sara or on disk

23   by Monday morning.

24         And then you should expect that, at the close of the

25   evidence on Monday -- on Monday, I will want to start hearing

 1   from the parties with respect to any objections that they have

 2   to any exhibits that -- instructions, excuse me -- that have

 3   been proposed by opposing counsel.

 4          **MR. HOGAN:**  Yes, Your Honor.

 5          **THE COURT:**  All right?

 6          **MR. HOGAN:**  And, Your Honor, I will get you -- I'll

 7   have filed today Defendant's proposed voir dire questions.

 8          **THE COURT:**  Oh, great.  Okay.

 9          And then you will also let me know with respect to

10   both of yours if there are some particular questions that you

11   want me to ask.  You know, some time by the end of the week,

12   let me know if there are particular questions you would prefer

13   that I ask.  Okay?

14          **MS. ANDERSON:**  Yes, Your Honor.  Thank you.

15          **THE COURT:**  All right?  Anything further from

16   anyone?

17          **MS. ANDERSON:**  Nothing from the Government,

18   Your Honor.  Thank you.

19          **THE COURT:**  All right.

20          **MR. HOGAN:**  Nothing else, Your Honor.

21          **THE COURT:**  All right.  Then we'll be adjourned.

22   And, you know, obviously, Mr. Price, whether you want to try

23   and reach a resolution with the Government or you want to go

24   to trial, this is your decision and a decision for you to make

25   with Mr. Hogan.  But if you all are going to be pursuing some

1    form of plea, you know, let's not wait till Monday morning to

2    do that.  If possible plea discussions are going to be had,

3    let's start having those really soon so that we can get any

4    plea done promptly and not be pulling in 50 members of the

5    public for no reason at all come Monday.

6              **THE DEFENDANT:**  Yes, Your Honor.

7              **THE COURT:**  All right.  Thank you.

8              **(The proceedings concluded at 11:45 a.m.)**

CERTIFICATE


     I, Carla M. Klaustermeier, Registered Merit Reporter and

Certified Realtime Reporter, hereby certify that I am a duly

appointed Official Court Reporter of the United States

District Court for the Eastern District of Missouri.

     I further certify that the foregoing is a true and

accurate transcript of the proceedings held in the

above-entitled case and that said transcript is a true and

correct transcription of my stenographic notes.

     I further certify that this transcript contains

pages 1 through 88 inclusive and was delivered electronically

and that this reporter takes no responsibility for missing or

damaged pages of this transcript when same transcript is

copied by any party other than this reporter.

     Dated at St. Louis, Missouri, this 8th day of March,

2023.



                    /s/ Carla M. Klaustermeier
                    Carla M. Klaustermeier, RMR, CCR, CSR, CRR
                    Official Court Reporter